# CHARLES H. ADAMS

*v.*

# CHARLES H. GAUBERT.

1. ACCOUNT—*partnership.* On bill to have a certain purchase declared a joint one, and for a share of the profits realized by the defendant, the bill also showing some other partnership dealings, it is not error to dismiss the bill on finding the question of the purchase for joint benefit against the complainant, instead of retaining it for an account, where the proofs taken fail to show anything due the complainant.

2. PARTNERSHIP. In this case the complainant sought to share in the profits realized by the defendant in the purchase and sale of a tract of land, on the ground that the parties were partners in the transaction, but the evidence failed to establish the fact.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. HILL & COWAN, for the appellant.

Messrs. MONROE, BISBEE & GIBBS, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill in chancery, brought by Adams against Gaubert, the main object of which was to recover one-half of the profits arising from the purchase and sale of the south half of the north-west quarter of sec. 25, town. 40, range 13, in Cook county, in this State.

The bill, in substance, alleges, that in August, 1868, the parties entered into a co-partnership, under the name of C. H. Gaubert & Co., for the purpose of doing a general business in buying and selling real estate for themselves, and on commission for other parties; that, while the co-partnership existed, about Feb. 3, 1869, Gaubert, for and on behalf of the firm, bought of R. R. Clark the above described tract of land for $32,000, and about Feb. 13, 1869, sold the same to Hiram Canfield for $80,000 ; that one-half of the profits of the transaction belonged to Adams, which Gaubert refused to account for.

The bill also alleged an indebtedness on the part of Gaubert to Adams, growing out of the alleged partnership, and prayed for an accounting.

The answer denied the alleged partnership, and alleged that on and prior to August, 1868, Gaubert was doing a real estate business alone, and on his own account, under the name of C. H. Gaubert & Co.; that the real arrangement made between him and Adams was, that the latter should come into the office of Gaubert, have desk room, and should pay for one-half of the furniture in the office belonging to Gaubert, and one-half of the office expenses; and that it was agreed between them, that when they worked together in buying or selling a piece of property for another they should divide the commissions received therefor, but that it was distinctly understood that neither was to have any interest in the separate purchases or transactions of the other.

Defendant admitted the purchase of the land in question, but alleged that it was made with his own funds, without the

aid or assistance of the complainant, and denied that the latter had any right to or interest in the profits made by the purchase and sale of the land, and also denied any indebtedness to complainant.

The court below, on hearing, dismissed the bill, and the complainant brings the case here on appeal.

In regard to a partnership, the testimony of the parties is contradictory, and, so far as depends upon their evidence, it can not be regarded as established, and particularly so to the extent claimed, of a general partnership for the buying and selling of real estate for themselves. The testimony derived from other sources was also conflicting, much of it tending to show a partnership connection, and at least an equal amount going to show the reverse. The use of a firm name, "C. H. Gaubert & Co.," unexplained, would have been a strong circumstance denoting a partnership. But it loses its significance under the proof, that it was a name which Gaubert had adopted and used in the carrying on of his own individual business, prior to and at the time when Adams came into the office, and that there was then no change in regard to the use of the name, but a mere continuation in that respect of Gaubert's previous mode of business.

The proof shows that after Adams came into the office, both the parties transacted real estate business on their own individual account, and that when either did business without the aid of the other, he had all the commissions. To some extent they were jointly concerned. Gaubert admits this, and enumerates the instances where they worked together in buying or selling property for others, and divided the commissions.

Adams, at the time of coming into Gaubert's office, was but slightly acquainted with Gaubert, and was without means, not having money to buy even one-half of the little furniture in the office, of the value of $120. The probability is against the idea that they would, under such circumstances, enter into a general partnership, for the purpose of buying and selling real estate. Adams, in reply to the question of

how many pieces of property he and Gaubert bought on their own account, says, he recollects but two : the piece bought from Scoville & Green, and the one involved in this suit. Gaubert explains the former as being an exceptional transaction, and not arising out of any partnership connection between the parties.

With regard to the land involved in this suit, the conceded facts are, that Gaubert made the agreement for the purchase of the land from Clark in his own name. Three hundred dollars were paid by Gaubert at the date of the agreement, it being of his own money. By the agreement, he was to pay $8000 as soon as the title was examined, and $24,000 in three equal annual payments, with seven per cent interest. Gaubert raised the money himself to make, and did make, the first payment of $8000 to Clark, and a large part of it was raised by mortgaging his house and lot. Adams does not pretend that he paid a dollar on this purchase, (further than that Gaubert had enough of Adams' money in his hands to make one-half of the payment of $300,) or that Gaubert asked him to pay a dollar.

Adams, in his testimony, does not state that Gaubert and himself agreed to purchase this land together, or that Gaubert ever agreed to pay him any of the profits of the purchase.

He testifies that he first called Gaubert's attention to the land, and that he went out with Sloan to ascertain the name of the owner ; that he went to Clark's office and agreed on the price and terms ; that he came back and told Gaubert of it ; and that he wrote the contract between Gaubert and Canfield, when the former sold to the latter. This is all that Adams pretends he did in the premises.

Clark testifies that Adams never came to see him about the purchase ; that he never saw Adams until after he had sold ; that Gaubert told him he was buying for himself; that after the contract with Gaubert he went to see him about some objections to the title, and, Gaubert being out, he spoke to Adams about it, and that Adams then told him it was a

matter of Mr. Gaubert's—that he, Adams, had nothing to do with it.

Gaubert testifies that Adams did not first call his attention to this land, but that it was J. J. Daniels that did so.

Three different witnesses testify to Adams' speaking to them of the transaction as one by Gaubert, whereby the latter had made $48,000 ; and one of them, that Adams said he had first called Gaubert's attention to the land, and that Gaubert ought to allow him a "nice commission."

The witness Sloan testifies, that he was present when Daniels came in and called Gaubert's attention to the land. He also says, that some time after the sale to Canfield was completed, he was present and heard Adams demand of Gaubert commissions on the Clark purchase, and that Gaubert refused to pay them unless Adams would pay him one-half the commissions or profits on the Ringe purchase, (a case where Adams and Sloan had realized $1000 each) and that finally it was agreed between them that Gaubert was not to pay any commissions on the Canfield sale, and Adams was to pay Gaubert no commissions or profits on the lands which Adams and the witness had sold, and that they settled the matter, and called it "square." Sloan further says, that Adams made no claim on Gaubert except for commissions. Gaubert testifies to this same arrangement and settlement.

In view of such evidence, with nothing to counteract its force, save the contradictory testimony of Adams, there was clearly no ground for the relief prayed, in respect to this 80 acres of land in question.

But it is insisted that, as there were some joint dealings between the parties, the bill should not have been dismissed, but that at least there should have been a decree for an accounting. That might have been proper did it appear that there were really any unsettled accounts between the parties requiring an adjustment. The account book, which, it is claimed on the part of Adams, would show an indebtedness to him, was produced by Gaubert on a former examination,

before the fire in Chicago, and was filed in the summer of 1871, and was destroyed, with the records in the case, by the fire. This book, according to the testimony of Adams, and his counsel, who made a careful examination of it in reference to the present suit, showed an indebtedness of Gaubert to Adams, to the amount of $800 or $1000, and tended to prove a partnership as well as an indebtedness. But this testimony is entirely neutralized by that of Gaubert and the witness Challen, according to which the book showed a small amount to be due from Adams to Gaubert. Considering the circumstances of Adams, it is quite improbable that Gaubert should have been indebted to him to any such amount as claimed by Adams to be shown by the books.

It is assigned for error, that the court below excluded the testimony of one Prentiss, a witness offered by the complainant, to testify to what appeared by the books. This testimony was offered after the complainant had once closed his evidence, and after defendant had introduced his, and rested. The court might have been justified in its exclusion, on the ground that it was not properly in rebuttal. But had it been received, and have agreed with complainant's other testimony on the point, we can not see that it should have changed the result.

The real subject of controversy between the parties appears to have been the profits arising out of this land transaction ; anything else as the subject of the bill is evidently but incidental, and quite secondary.

As to any unadjusted indebtedness, there do not appear to be any complicated accounts. The books of account are destroyed. The evidence probably rests with the parties themselves. They have testified fully upon the subject of any indebtedness, and we are satisfied with the finding of the court, that there was no case made that required an accounting.

The decree will be affirmed.

*Decree affirmed.*