IDA E. SCHMIDT

*v.*

GEORGE M. SHAVER *et al.*

*Opinion filed April 16, 1902.*

1. GUARDIAN AND WARD—*at common law, guardian could sell personal property of ward without order of court.* At common law a guardian had power to sell the personal property of his ward without an order of court, and although he was liable on his bond for an abuse of power, the purchaser, with no notice of the guardian's fraud, would take good title.

2. SAME—*common law powers of guardian, not inconsistent with statute, still exist.* So far as our statutes prescribe the powers and duties of guardians they supersede the common law, but the common law powers of guardians still exist when consistent with statute.

3. SAME—*right of probate court to order the sale of minor's judgment.* If it is shown to the probate court by a guardian that a judgment in favor of his ward cannot be collected at that time and that the ward is in pressing need of funds, the court may order the guardian to sell the judgment for a price which it finds to be a good one.

4. PRINCIPAL AND AGENT—*party affirming existence of relation of agency has burden of proof.* If a guardian, authorized by order of court to sell a judgment in favor of his ward, makes out an assignment thereof which he delivers to a third party for safe keeping, a purchaser of the judgment from such third party has the burden of proving that he was the agent of the guardian and authorized to make delivery and receive payment.

5. SAME—*when purchaser is bound to ascertain authority of an agent.* One having notice that the party having possession of an assignment of a judgment is not the owner of the judgment nor entitled

to the proceeds, but that they belong to a guardian, is bound to ascertain what authority such party has to make delivery and receive payment as the agent of the guardian.

6. SAME—*mere fact that party assumes to act as agent does not prove agency.* The mere fact that the party to whom a guardian delivered an assignment of his ward's judgment for safe keeping assumes to act as agent of the guardian in delivering the assignment and receiving the proceeds therefor, which he appropriated, does not establish the fact of his agency, in the absence of proof of his appointment or that the guardian ratified his acts or held him out as agent, and neither the purchaser nor his assigns can hold title to the judgment as against the ward.

7. JUDGMENTS AND DECREES—*filing assignment of a judgment with clerk is not notice.* The filing of assignments of a judgment with the clerk of the court is not constructive notice to any one, since not required to be recorded and not considered public records.

8. SAME—*assignment of a judgment transfers only an equitable title.* A judgment for damages for personal injuries cannot be assigned so as to transfer more than an equitable title thereto.

*Schmidt* v. *McBean*, 98 Ill. App. 421, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

DEFREES, BRACE & RITTER, for appellant:

The guardian had no power to sell the judgment and the probate court had no power to authorize sale thereof. Starr & Curt. Stat. chap. 64, sec. 17; *Hayes* v. *Insurance Co.* 125 Ill. 626.

The authority given by the statute to compound a debt does not include the power to sell it. 6 Am. & Eng. Ency. of Law, (2d ed.) 377; 2 Freeman on Judgments, sec. 430; *Union Trust Co.* v. *Rigdon*, 93 Ill. 458.

If the guardian had power to sell and assign the judgment, still the assignment under which the defendants claim has no validity because it was never delivered. The negligence, if any, of the guardian cannot be imputed to the complainant. *Railway Co.* v. *Wilcox*, 138 Ill. 370; *Daube* v. *Tennison*, 154 id. 210.

A judgment is not negotiable.   The assignee takes a mere equitable title, and a subsequent assignee takes no better title. *Hughes* v. *Trahern,* 64 Ill. 48; *Yarnell* v. *Brown,* 170 id. 362; *Dobbins* v. *Cruger,* 108 id. 188.

Even if the judgment were negotiable, proof of the circumstances under which the assignment was made would have thrown upon the defendants the burden of proving that the purchaser took the assignment in good faith, for value, and without notice of the alleged agent's want of authority to deliver the paper and receive the proceeds. *Wright* v. *Brosseau,* 73 Ill. 381; *Charles* v. *Remick,* 156 id. 327; *Hodson* v. *Eugene Glass Co.* 156 id. 397; *Bank* v. *Alexander,* 184 id. 416; 82 Ill. App. 484.

If the equities are evenly balanced the legal title of the complainant must prevail. 1 Beach's Eq. Jur. sec. 11.

The filing of the assignment with the clerk, and his memorandum thereof on the judgment docket, was not constructive notice to complainant that the assignment had been made. *Railway Co.* v. *Blanchard,* 37 Ill. App. 391.

GEORGE SAWIN, for appellees:

No doubt is entertained of the competency of a guardian's power over the disposition of the personal estate as between him and a *bona fide* purchaser, unless restrained by statute.   Although the guardian is liable on his bond for any abuse of this power, yet the vendee takes a good title if he has no notice of the guardian's fraud. *Wallace* v. *Holmes,* 9 Blatchf. 65; Woerner on Am. Law of Guardianship, sec. 54, p. 179; *Field* v. *Schieffelin,* 7 Johns. Ch. 150; *Woodward* v. *Donally,* 27 Ala. 198; *Fountain* v. *Anderson,* 33 Ga. 372; *Bank of Virginia* v. *Craig,* 6 Leigh, 399.

The guardian's power to sell the ward's personal estate without first obtaining a license therefor,—*i. e.,* an order of court,—includes the power to sell a note or debt belonging to the ward as well as a mortgage securing the same.   Woerner on Am. Law of Guardianship, sec. 54, p. 179, and case cited; *Humphrey* v. *Buisson,* 19 Minn. 221.

A guardian, under our statutes, has the power, under approbation and direction of the county court, to compound or compromise in respect to his ward's rights. For the personal discretion of the guardian there was substituted the judicial determination of an established court. *Hayes* v. *Insurance Co.* 125 Ill. 635.

A guardian may dispose of the personal estate of his ward as he may think most beneficial to the ward, and the person who buys from or through the guardian in good faith, with no knowledge of any fraudulent intent on the part of the guardian, is not responsible for the application of the money. 7 Johns. 150; 27 Ala. 198.

A purchaser buying at a judicial sale has only to look to the jurisdiction of the court and to the decree. *Fitzgibbons* v. *Lake*, 29 Ill. 176.

Although a guardian may have misappropriated funds derived from his ward's estate and been faithless to his trust, an innocent purchaser will be protected. *Mulford* v. *Stalzenback*, 46 Ill. 302.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On December 11, 1894, appellant, Ida E. Schmidt, who was then a minor, suing by James W. Hurdle, her next friend, recovered a judgment against the city of Chicago, one of the appellees, for $5000 damages for a personal injury. The suit was prosecuted by the People's Casualty Claim Adjustment Company, a corporation, under a contract with the parents of appellant by which the corporation was to receive for its services one-fourth of the amount collected in case of settlement and one-third in case of suit. Charles W. Beck was president and manager of the corporation, and shortly before the rendition of the judgment, at his suggestion and procurement, George M. Shaver, one of the appellees, was appointed guardian of the appellant by the probate court of Cook county. Afterward there were negotiations for the sale

of the judgment to Amos H. Perkins, whom one Holmes seems to have found as a purchaser at $4375. Beck had spoken to Shaver, the guardian, about selling the judgment, and obtained an order of the probate court March 4, 1895, for its sale through an attorney of the corporation. This order recited that Shaver, the guardian, had presented his petition, and it appeared to the court that there was no favorable prospect of the payment of the judgment at an early day; that the parents of the minor were poor and unable to properly care for her; that petitioner had received an offer of $4375, which was a good one under the circumstances, and that the minor was in need of immediate medical and surgical attention and in need of money. It was therefore ordered that the petitioner, as guardian, have leave to compound and sell the judgment for not less than $4375. Beck called on Shaver the same day and told him he had arranged a meeting with the purchaser, and they went to the office of Holmes, where Shaver signed and acknowledged, in duplicate, an assignment of the judgment to Perkins. Shaver and Beck and a clerk from Holmes' office then went to the Northern Trust Company Bank and left the assignment with the cashier, informing him that it was arranged for Perkins to come in in the course of a day or two and pay the amount, and the cashier was directed to deliver the assignment to Perkins upon payment and to pay the proceeds to Shaver, the guardian. After several days Shaver and Beck went to the bank and found the money had not been paid, and the cashier re-delivered the assignment to Shaver. Beck and Shaver then went to the office of the corporation, and Beck suggested that possibly Perkins might have difficulty in getting the money and would later carry out the deal. Holmes had gone to New York, and Beck said that he would see him in the course of a few days on his return and would let Shaver know if the deal would be consummated. Shaver had some papers for safe keeping in the vault of the corpo-

ration in cases where he was administrator or guardian, but had no private box there. He concluded to leave the assignment in the vault, and called a young woman, who was stenographer and book-keeper in the office, and handed the assignment to her to be placed in the vault. She put the papers in an envelope and put them in the vault of the corporation. Shaver never heard anything more about the proposed sale or the prospective pur-, chaser. About eight months afterward he inquired of Beck about the prospect of selling the judgment, and he said there was no immediate prospect of a sale, although he had, in fact, sold it and received the money. About March 23, 1895, Beck delivered the assignment left in the vault of the corporation to Perkins, and received in payment from Perkins a check of the Western Paving and Supply Company, of which Perkins was an officer, given at his request, payable to the order of C. W. Beck, for $4375, which was endorsed by Beck and was paid on March 25, 1895. On May 10, 1895, Perkins assigned the judgment to Duncan S. McBean. On May 17, 1895, McBean assigned it to the Commercial National Bank of Chicago. On September 20, 1895, the Commercial National Bank re-assigned it to McBean. On May 18, 1897, McBean assigned the judgment to James H. Pearson, one of the appellees. Each of the assignments was filed with the clerk of the court where the judgment was rendered. Neither Shaver nor appellant knew anything of the delivery of the assignment and there was no report of the sale to the probate court. The proceeds were never received by Shaver nor accounted for in any way. Appellant became eighteen years of age July 10, 1897, and she and her mother began to make inquiries about the judgment. On July 13, 1897, Beck wrote to appellant's mother that it would be some time before they could get the money; that it was not yet on the appropriation, and would probably be put on the appropriation next year and then paid after that. On August 11, 1897,

the probate court entered an order reciting that Shaver had presented his report showing that the estate of the minor consisted of said judgment, which remained unpaid, and it appeared to the court that no sale had been made under the order of March 4, 1895, authorizing the sale of the judgment. The order authorizing the sale of the judgment was vacated and set aside and leave given the guardian to assign and transfer the judgment to his ward. On August 12, 1897, Shaver, as guardian, executed an assignment of the judgment to appellant, and an order was entered reciting such assignment and Shaver was discharged as guardian. Beck delivered the assignment to appellant and told her the judgment would be paid in about two years; that it had not been paid sooner because it had to go according to its turn, and advised her to keep the assignment in a safe place. She put it under her carpet, and saw Beck afterward, when he told her the judgment had not been paid and she would have to wait. On February 8, 1899, Beck wrote to appellant's mother that he would look up the judgment and see when it would be paid. On February 20, 1899, he wrote appellant that he had not been able to find out the exact status of the judgment and when the city would pay it, but would write her as soon as he had found out; that he had found there had been several transfers and was quite surprised, and when he found out when the judgment would be paid he would take steps to enforce its payment to her. The city had been paying interest on the judgment to the several assignees, the last payment being January 27, 1899. About the time of this last letter appellant first discovered the facts, and she filed the bill in this case for the purpose of setting aside and vacating the assignment to Perkins and the subsequent assignments to the parties claiming through him. McBean had died and his executors were defendants, and Perkins died while the suit was pending. The foregoing facts were proved on the hearing in the supe-

rior court, and complainant's bill was dismissed for want of equity.

It is first contended on the part of appellant that her guardian had no power to sell the judgment and that the probate court had no power to authorize or direct a sale. At common law a guardian had power to sell the personal property of his ward without an order of the court, and although he was liable on his bond for an abuse of the power, the vendee, with no notice of the guardian's fraud, would take a good title. (15 Am. & Eng. Ency. of Law,—2d ed.—p. 56.) So far as our statutes prescribe the powers and duties of guardians, they supersede the common law. (*Hayes* v. *Massachusetts Mutual Life Ins. Co.* 125 Ill. 626.) But the common law powers of guardians still exist, where not inconsistent with the statute. (*Bond* v. *Lockwood,* 33 Ill. 212.) The proposed sale of the judgment in this case was not within the terms of any statute, and the guardian would undoubtedly have had the power to dispose of it at its face value, which would have been equivalent to collecting and receiving the whole amount of the demand, without any order of the court. The judgment could not be collected at the time, and the court, which had general supervision of the guardian, found that the price offered was a good one under the circumstances. We think the probate court had a right to authorize the sale of the judgment at what it found to be its actual value. The guardian, however, never carried out the order of the probate court and never delivered the assignment to Perkins, unless Beck was his agent to make the delivery. The rights of Perkins and the subsequent assignees must depend upon establishing an agency in Beck to make the delivery and receive the payment. Upon that question, the burden of proof was upon the defendants, who affirmed the existence of the relation of principal and agent between the guardian and Beck.

There is no presumption of Beck's authority, and one who claims the benefit of a contract made through an

agent has the burden of proof when the alleged agency is denied. In order to prove the agency, the defendants were bound to prove an appointment, either express or implied from the circumstances, or that the guardian held Beck out as his agent with authority to make the delivery and receive the payment. Perkins had notice that Beck was not the owner of the judgment and was not entitled to the proceeds, but that they belonged to the guardian, and that Beck could only receive them as agent for the guardian, and it was therefore incumbent on him to ascertain what Beck's authority was. The guardian never authorized Beck to deliver the assignment or receive payment, and never knew of the act until it was discovered after his discharge, shortly before this suit was begun. The filing of the assignments with the clerk of the court did not operate as constructive notice to the guardian or appellant. They were not required to be recorded and were not contemplated by the statute as public records, and would not amount to constructive notice to any one. (Wade on Law of Notice, sec. 119; *Bourland v. County of Peoria,* 16 Ill. 538; *Betser* v. *Rankin,* 77 id. 289.) The guardian never received any part of the proceeds and never ratified the sale or the act of Beck in any manner. The mere fact that Beck assumed to act as agent in delivering the assignment and receiving the payment, without the knowledge or subsequent ratification of the guardian, was not sufficient to prove the agency. It is beyond question that the guardian never held Beck out as having authority to receive payment, unless it was by the single act of leaving the assignment for safe keeping in the vault of a corporation of which Beck was the manager, and the only reason Perkins had for assuming that Beck was the agent of the guardian was that he had possession of the assignment. Beck was not an attorney or broker, and the sale of judgments was not within the scope of the usual business carried on by him, from which an inference of authority might arise. It is true, that

where a person has possession of a promissory note which is due and payable, it may be inferred that he has authority to receive payment of it. (*Stiger* v. *Bent*, 111 Ill. 328.) But authority to receive payment cannot be inferred from possession when the paper is not due. (*Fortune* v. *Stockton*, 182 Ill. 454.) And the mere possession of personal property does not generally authorize an inference of power, as agent, to sell it and receive the proceeds. So far as appears, Perkins made no inquiry as to Beck's authority, but from the mere possession of the paper dealt with him and paid with a check payable to the order of Beck. He thereby put it in the power of Beck to misapply the proceeds and defraud the guardian. He might have protected himself by inquiry or by making the check payable to the order of the guardian. There was no previous course of dealing recognized or acquiesced in by the guardian from which authority could be inferred and no other relation out of which an agency ordinarily arises, and we cannot regard the alleged agency proved by the mere fact that Beck had possession of the assignment.

Neither was there any evidence that the guardian held Beck out as his agent with authority to make the delivery and receive the proceeds. Where one party holds another out as his agent with authority to do an act, he is bound by the act of the agent on the ground of estoppel. The guardian left the assignment with the corporation merely for safe keeping, and Beck possessed himself of it wrongfully, and delivered it in fraud of the rights of the guardian and appellant. Beck knew that he had no authority to deliver the assignment, as is clearly shown by his conduct. He told the guardian, eight months after he had received the proceeds, that there was no prospect of selling the judgment, and kept informing appellant and her mother that the judgment would probably be paid to them some time in the future. The transaction by Beck was fraudulent, and it was essential for defendants to

show that Perkins believed in the existence of, and relied upon, the agency and authority of Beck, and that he had no notice of the fraud. It was agreed by counsel that Pearson would testify that he purchased the judgment from McBean in good faith and for value and with no knowledge of any defect in McBean's title, and that he was advised of the state of the record. There was no evidence on the same questions as to Perkins, the only evidence being that he gave the check payable to the order of Beck and received the assignment. The equities of the case are with the appellant, and if Perkins did not get title to the judgment, those claiming through him obtained none. The judgment was not assignable, and all that could be transferred was an equitable title. (*Hughes* v. *Trahern,* 64 Ill. 48.) The alleged agency of Beck for the guardian was not proved. There was no express appointment or authority conferred or intended to be conferred. There was no previous course of dealing, relation of the parties, usual employment, or other circumstance from which an appointment could be fairly implied. The guardian did nothing which ought to estop him as having held out Beck as his agent.

Appellant has a right to have the assignments set aside and to collect her judgment. Neither Beck nor the People's Casualty Claim Adjustment Company is a party to this suit, and any right of Pearson or other assignee of the judgment, as against them or either of them, to any part of the proceeds of the judgment when collected, will not be affected by the decree. If there are any equities between them, they may be enforced in some other proceeding.

The judgment of the Appellate Court and the decree of the superior court are reversed, and the cause is remanded to the superior court with directions to enter a decree in accordance with the prayer of the bill.

*Reversed and remanded.*