(No. 24923.—)

WILLIAM J. HICKEY, Appellant, *vs.* ALICE HICKEY *et al.* Appellees.

*Opinion filed April 14, 1939—Rehearing denied June 13, 1939.*

GEORGE WILLIAM SULLIVAN, JOHN B. KING, and EDWARD H. S. MARTIN, for appellant.

RATHJE, HINCKLEY, BARNARD & KULP, (JOSEPH J. SULLIVAN, JR., of counsel,) for appellees.

Mr. JUSTICE ORR delivered the opinion of the court:

William Hickey filed his complaint in the superior court of Cook county asking for an accounting of certain moneys

and securities claimed by him and in the possession of his sisters, Alice Hickey and Helen Curran. He also claimed title by virtue of a resulting trust in certain real estate conveyed to his father, claiming that he had purchased it with his own money and that it should now be reconveyed to him. A master in chancery heard the proof and found that plaintiff had failed to prove his allegations by a preponderance of the evidence, and after overruling objections and exceptions, the chancellor entered a decree dismissing the complaint for want of equity. An appeal was taken to this court as a freehold was directly put in issue by the pleadings.

The claims of William Hickey are expressly denied by his two sisters, Alice and Helen, in all of their essential points. In substance, he testified that in May, 1921, while living with his parents and sister Alice, he opened a tavern at Fifty-fourth and Bishop streets in Chicago; that every night during the three years he was in this location, he would turn over to Alice the money he had taken in during the day and from the receipts would pay his bills as they accrued. He said that in 1924, he moved his tavern to 1901 West Sixty-third street, where he lived with his sister Helen in the apartment above; that until Alice moved in with them he would turn over the receipts of his business to Helen and she did his banking, and thereafter Alice again had charge of his funds. He said he kept no books or records of his business, but from memory asserted the average weekly net profit of his tavern during prohibition times was $500, and that when the sale of liquor became legal this net profit dropped to around $150. The daily gross receipts were kept in a cigar box and he related there would always be around $1000 in the box, for checks totaling that sum would be cashed for customers, especially on Friday. He testified he had accounts handled by Alice in two different banks and that she also had accounts in her name in other banks. During these years he said he never asked Alice for an accounting as he trusted her implicitly and believed she would account when asked to do so.

Plaintiff further testified that he purchased the property on Sixty-third street and took title in the names of his parents, John and Anna Hickey, because he was at the time engaged in an unlawful business. He said $11,500 was paid down on the purchase price and a mortgage of $10,000 given for the remainder; that the down payment was his money, with the exception of $5000 borrowed from his father, and came from moneys belonging to him and in the possession of Alice; that the money borrowed from the father, as well as the mortgage indebtedness, were paid off in short order by Alice, who took money from his daily receipts for that purpose. He claimed that John and Anna Hickey deeded his property to Alice in defiance of their trust and that she, in turn, had the title conveyed to her mother and herself as joint tenants, so that, upon the subsequent death of the mother, Alice became the sole owner. He further testified that the property on Sangamon street was procured by Alice through the purchase of a mortgage on the same and that she subsequently got the title by the use of moneys obtained from the daily receipts of his business. He also claimed that a postal savings account of $2500 standing in the name of his mother was built up by Alice solely from money belonging to him.

In substance, the testimony of the two sisters, Alice and Helen, flatly contradicts their brother's assertions. They both testified that their parents, John and Anna Hickey, by hard work and frugality, had accumulated considerable property. Alice said she had always looked after the business interests of the father and, after his death, had so acted for her mother. No administration proceedings were had either on the estate of the father or mother. During the life of John Hickey his contributions to his wife, Anna, with Alice's aid, had enabled her to increase her property. Additional aid was also given by the money John Hickey left when he died. Alice denied that any of the property, moneys, bonds and securities now held by her were derived

or obtained by any use of any property or moneys belonging to her brother, William. On the contrary, she said it all came from John or Anna Hickey, or from both. Alice and Helen both denied that William, over the fifteen-year period from 1921 to 1936, had turned over the daily receipts of his tavern business to either of them when he would bring the cigar box to the apartment where they lived. This box, according to their testimony, would only contain about two hundred dollars to be used in cashing checks and paying some bills. The varying contents of the box would be counted by either sister, according to prevailing circumstances, as a matter of accommodation to William and, on occasions, the surplus would be banked for him. They denied the agency testified to by him and said he was the master and sole dispenser of whatever income he might have derived from his tavern business.

As to the Sixty-third street property, Alice and Helen both asserted that their father, John Hickey, purchased it for himself, using his own money, or money belonging to himself and wife, in making the down payment. They said the mortgage was paid off with money derived from their estates after their deaths; that their brother, William, paid rent for the space occupied in the building by his tavern and Helen paid rent for the apartment above, until her mother and Alice joined her. They also testified that their father, John Hickey, never loaned William $5000 to buy the property and that William had no interest therein except as tenant, and that he had, as a fact, paid rent to Alice after the death of his mother. They also related how the title to the Sangamon street property was derived through use of funds accumulated by the parents and that funds of the same character had been used in acquiring the mortgage on the same. They denied that any money belonging to plaintiff had been used in the acquirement of the mortgage or fee and said the title to this property was taken in the names of Alice, Helen and William as joint tenants fol-

lowing the death of their mother, Anna Hickey. Their testimony concerning the postal savings account was a complete denial that William had ever contributed any money to it, and asserted that it was wholly built up with funds in the hands of Alice which belonged to the mother, Anna Hickey. This fund, after Anna's death, was secured and equally divided between the five children of John and Anna Hickey. Each sister denied the present or past possession of any money or other property belonging to William, and Alice denied that she had ever acted as agent for her brother with reference to any of his money or investments.

We have examined the supporting testimony introduced by the parties, and the preponderant weight thereof is distinctly against the plaintiff's claim to any further interest, legal or equitable, in the real estate. His claim to the postal savings account is not supported by the testimony of disinterested witnesses and this is true, also, with reference to his claim that his sister Alice acted in a fiduciary capacity as his agent. The testimony of Alice that such an agency did not exist is strongly supported by the testimony of Helen, and by the contradictory nature of the testimony of plaintiff and his witnesses. For instance, he testified that the entire receipts of his business were delivered to Alice as his agent, or came into her hands and complete control as his agent. This is not in harmony with his testimony that he withdrew from one of his accounts the sum of $15,000 at one time, nor does it agree with the testimony of his witness that a short time before the Sixty-third street property was sold to John Hickey, plaintiff had purchased property on Wood street for $11,000. His testimony regarding gross and net income is highly conjectural, is not corroborated by any book accounts, checks or other written memoranda, and finds no support in the record whatsoever.

William alleged that his sister Alice was his agent during the years stated, and the burden rested upon him to establish this to be a fact. (*Schmidt* v. *Shaver*, 196 Ill. 108;

*Fish* v. *Teninga,* 330 id. 160.) This he was required to do by a preponderance of the evidence and in this he has failed. Once the agency is established the fiduciary character of Alice would naturally follow, for an agent is a fiduciary with respect to matters within the scope of the agency and is duty bound to act solely for the principal in matters connected with that agency. (Restatement of Law of Agency, secs. 13 and 387; *Perry* v. *Engel,* 296 Ill. 549; *Spar Mountain Mining Co.* v. *Schwerin,* 305 id. 309; *Lahr* v. *Kraemer,* 91 Minn. 26, 97 N. W. 418; 2 Corpus Juris 930.) Such money of plaintiff as either of his sisters ever had, was, according to their testimony, banked for him. He failed to trace any of his specific funds on any specific amounts into the hands of either sister. He failed to show any wrongful appropriation of any funds belonging to him, by either sister. He failed to sustain the burden of proving that he was entitled to an accounting, and that was his first duty. *Adams* v. *Gaubert,* 69 Ill. 585; *Ligare* v. *Peacock,* 109 id. 94; *Oskaloosa Savings Bank* v. *Mahaska County State Bank,* 205 Iowa, 1351, 219 N. W. 530, 60 A. L. R. 1204; 1 Corpus Juris 642; 1 C. J. S. par. 39, p. 677.

By a clear preponderance of the evidence, it appears that none of the money belonging to William Hickey was ever used in the purchase of the Sixty-third street and Sangamon street properties, or in the establishment of the postal savings account. He likewise failed to establish a liability on the part of either Alice or Helen for the wrongful use of any part of the income from his tavern business.

The decree of the superior court, dismissing the complaint for want of equity, was justified by the evidence and is, therefore, affirmed.

*Decree affirmed.*