(No. 31921.—

Margarett Latimer *et al.,* Appellants, *vs.* Russel A. Perry *et al.,* Appellees.

*Opinion filed September 21, 1951—Rehearing denied Nov. 19, 1951.*

GEORGE R. FITZMAURICE, of Chicago, for appellants.

EUGENE P. MEEGAN, of Chicago, (WILLIAM N. BRADY, of counsel,) for appellees.

Mr. JUSTICE FULTON delivered the opinion of the court:

This is an appeal by the plaintiffs from a decree of the circuit court of Cook County dismissing for want of equity their complaint in chancery which attempted to set aside certain conveyances of real estate located at 4760 Lake Park Avenue in the city of Chicago. A freehold being involved, the appeal has been perfected to this court.

The amended complaint alleged that the plaintiffs are double cousins and are the only heirs-at-law of Jessie Perry, deceased; that Jessie Perry died on March 8, 1948, at the age of 82 years, and that on September 18, 1947, she was the owner of a building at 4760 Lake Park Avenue in Chicago, consisting of a 2½-story brick building containing 10 rooms and valued at $10,000, free and clear of all encumbrances. It is alleged that the defendant Russel A. Perry, occupied a fiduciary relationship with the said Jessie Perry, deceased, on September 18, 1947, on which date she executed a deed of conveyance to him and his wife of said premises. It is further alleged that she did not understand the nature and purport of her acts by reason of mental incompetence and that she did not have independent legal advice or counsel at the time she made the

conveyance. It is also alleged that on September 30, 1947, the date she signed a contract with the defendants, and on December 2, 1947, when she signed a deed correcting the legal description in the deed of September 18, 1947, Russel A. Perry occupied a fiduciary relationship with Jessie Perry and that she was mentally incompetent and had no independent counsel in said transactions. Plaintiffs ask that the deeds be set aside and that defendants account for the reasonable rental covering the use and occupancy of the premises from the time of their occupancy to the date of giving up possession and the costs of suit.

The answer of the defendants was in the form of a general denial. After the matter was referred to a master in chancery and certain proofs were taken, an amended answer was filed by the defendants in which they denied that the plaintiffs were the only heirs-at-law, denied that the real estate was of a value of $10,000, and alleged that the same was not worth $5000 because it was in a state of disrepair. They admit the execution of the deeds and allege said deeds were executed pursuant to an agreement wherein, in consideration of their receiving a deed of conveyance to the property, they were to improve the same and were to provide for Jessie Perry during her lifetime. Certain other pleadings were filed by the parties which it is not necessary to recite in detail since the issues were formed by those recited above.

A master in chancery heard testimony and received certain exhibits in evidence and reported in favor of the defendants. In his original report he made no finding with reference to the question of a fiduciary relationship, and the chancellor referred the case back to the master in chancery, requesting that he make a finding as to whether a fiduciary relationship had been established by the plaintiffs and, if the fiduciary relationship had been established, whether the defendants acted fairly and honestly with the said Jessie Perry. The master filed his supplemental re-

port in which he held that no fiduciary relationship existed between Jessie Perry and Russel A. Perry and that the consideration was fair between the parties. Exceptions were filed to this report and the chancellor entered an order overruling the exceptions and dismissing the amended bill of complaint for want of equity, and the costs were taxed against the plaintiffs.

The plaintiffs in their appeal contend that Russel A. Perry occupied a fiduciary relationship with Jessie Perry at the time he obtained from her the deeds of conveyance to himself and his wife. They also contend that, in view of the fiduciary relationship which existed, it is presumed that the deeds are not valid and that the presumption has not been overcome by the defendants. They likewise contend that the decree of the court is against the manifest weight of the evidence.

A review of the evidence indicates that Jessie Perry had been a widow for about 25 years and that she was the owner of the premises at 4760 Lake Park Avenue which consisted of a 2½-story brick dwelling containing 10 rooms, free and clear of encumbrance, and that it had a rental value of about $75 per month. She had no children and since her husband's death had lived in this house and operated a nurses' registry. She had no close contact with the plaintiffs other than an exchange of Christmas cards and occasional correspondence with them. Many years ago she had become acquainted with a woman named Cora Jackson of Muskegon, Michigan, who was the grandmother of Phyllis M. Perry, one of the defendants herein.

Russel and Phyllis Perry are young people about 35 years of age, both of whom were employed and who lived in a small apartment at 4441 South Greenwood Avenue in Chicago. Sometime during the year 1945 they became acquainted with Jessie Perry, and the circumstances of their acquaintance are in dispute, but it is evident from the record that the acquaintance arose through Mrs. Perry's

acquaintance with Phyllis Perry's grandmother. The similarity in the last names of the deceased and the defendants is purely coincidental, there being no relationship between them.

On or about August 1, 1945, Russel Perry was deputized to have access to the safety-deposit box of Jessie Perry. During 1945 and 1946 he did not enter the box although Mrs. Perry did on at least one occasion enter the box herself. In 1947 and 1948 he entered the box a total of 17 times. It appears that he and his wife transacted certain small items of business for Mrs. Perry during 1945 and 1946 and 1947, but these transactions could be more properly described as errands performed for her because of her physical difficulties in walking. For many years prior to 1946 and 1947, Jessie Perry had used the services of a colored man by the name of Percy Williams as a janitor and maintenance man for her house and he had a key to the house. He became addicted to the use of alcoholic beverages and while he was drunk he was in trouble and subsequently was fatally wounded in an altercation. Mrs. Perry expressed herself to various people as being fearful that he would kill her in one of these drunken sprees and kept various doors inside of her house locked. About this same time an adjoining house caught on fire and two women who lived next door died in this fire and Mrs. Perry was overcome by smoke which came into her own home. During this same period of time an acquaintance of Mrs. Perry, who lived alone, died, and her body was not discovered for many days thereafter, and Mrs. Perry discussed this matter with some of her neighbors and was fearful that this might occur to her. Furthermore, the evidence indicates that her house and the furnishings thereof were in disrepair and that her cooking facilities were such that she could not prepare or preserve her food, and it was necessary for her to receive food from neighbors.

The testimony indicates that she also attempted to find a home with other people and did live for a week or so with a neighbor but decided that she would be happier in her own house and returned to her own home. These occurrences all took place prior to the conveyance of the property complained of but within a few months prior thereto.

The deeds appear to have been prepared by an attorney who was a brother of Phyllis Perry and resided with her and her husband. Also a contract between Jessie Perry and the defendants and a will for Jessie Perry were prepared by him.

The notary public who notarized the deeds testified that Russel Perry asked her to come to the Jessie Perry home to notarize the signature but that she could not come and stated that she was acquainted with Jessie Perry for more than 10 years prior to that time and was well acquainted with her signature, and that Jessie Perry had told the notary previously that she should notarize anything which Russel Perry brought her which was signed by Jessie. The deeds were taken to the notary and she notarized them outside of the presence of Jessie Perry.

The contract with reference to support is as follows:

"IT IS AGREED by and between Russel A. Perry and Phyllis M. Perry, his wife, parties of the first part, and Jessie F. Perry, party of the second part, as follows:

"WHEREAS, the said Jessie F. Perry, having now arrived at an advanced age in life, desires to live with the parties of the first part where she can be comfortable the remainder of her life, and is now living with the said parties of the first part;

"Now, Therefore, the said parties of the first part, in consideration of One ($1.00) Dollar and other good and valuable consideration, jointly and severally covenant, promise and agree to and with the said party of the second part:

1. That second party may live in their home with them during the remainder of her life.

2. That second party will be supplied at regular morning and evening meals with food. Second party is to eat said meals with parties of the first part except in case of her illness, when she is to

be served said meals in her room. Second party is to prepare her own noon meal.

3. All of second party's funeral expenses are to be paid by her estate.

4. Party of the second part is to be permitted to have visitors.

5. Party of the second part is to provide and pay for all of her own clothing.

6. A breach of any of the provisions of this Agreement shall not affect the property located at 4760 Lake Park Avenue, Chicago, Illinois.

7. Parties of the first part shall have the right to remodel, redecorate or repair the premises at 4760 Lake Park Avenue, Chicago, Illinois, at their option, with the exception that they are not to disturb the room of party of the second part on the second floor in the front, or the living room on the first floor. Parties of the first part shall have the right to clean when necessary the said two rooms.

8. Parties of the first part are to make all necessary plumbing repairs, redecorate kitchen, supply carpet for the stairs from the first to the third floors, clean dining room walls and ceiling, in addition to decorating the living room on the third floor and one large and one small bedroom on the third floor; parties of the first part shall do all of said work at their own expense.

9. On the death of second party, parties of the first part agree to give two hundred fifty ($250.00) Dollars to the Chicago Unit of Masonic Crippled Children Hospital as a memorial, in Jessie F. Perry's name, to Dr. Weller Van Hook.

In Witness Whereof, the parties hereto have hereunto set their hands and seals this 30th day of September, A.D. 1947.

> (Signed) JESSIE F. PERRY (Seal)
> (Signed) RUSSEL A. PERRY (Seal)
> (Signed) PHYLLIS M. PERRY (Seal)

Signed and sealed by Jessie F. Perry, Russel A. Perry and Phyllis M. Perry, in the presence of the undersigned, who, at their request, and in their presence, and in the presence of each other, have hereunto subscribed our names as witnesses thereto, believing Jessie F. Perry to be of sound mind and memory.

> (Signed) SAMUEL A. JACKSON
> Address 4441 S. Greenwood Ave.,
> Chicago, Ill.

> (Signed) PAUL R. PERIOLAT
> Address 8348 S. Prairie Ave.,
> Chicago, Ill."

The will of Mrs. Perry is as follows:

"LAST WILL AND TESTAMENT
OF
JESSIE FREMONT PERRY

"I, Jessie Fremont Perry, of the City of Chicago, County of Cook and State of Illinois, being of sound mind and memory, do hereby revoke any and all former Wills or Codicils by me made, and do make, ordain, publish and declare this my Last Will and Testament.

"First: I direct that my executors hereinafter named, pay all my just debts and funeral expenses as soon after my decease as conveniently may be.

"Second: After the payment of such debts and funeral expenses, I give, devise and bequeath to my friend, Rella Moss, Appleton, Wisconsin, my amethyst and pearl ring; I give, devise and bequeath to my friend, Cora Jackson, Muskegon, Michigan, my seal skin coat.

"Third: All the rest, residue and remainder of my estate of whatever kind and wherever situated of which I may die possessed, I give, devise and bequeath to Russel A. Perry and Phyllis M. Perry, share and share alike, or the survivor of them.

"Fourth: I nominate and appoint said Russel A. Perry, now connected with Rotary International, to be the executor of this, my Last Will and Testament, without bond.

"In Witness Whereof, I have hereunto set my hand and seal this 30th day of September, A.D. 1947.

JESSIE FREMONT PERRY (Seal)

"Signed, sealed, published and declared by the said Jessie Fremont Perry on the said 30th day of September A.D. 1947, as and for her Last Will and Testament, in the presence of the undersigned, who, at her request and in her presence, and in the presence of each other, have hereunto subscribed our names as witnesses thereto, believing her to be of sound mind and memory.

SAMUEL A. JACKSON
Address
4441 S. Greenwood Ave.
Chicago, Ill.

PAUL R. PERIOLAT
Address
8348 S. Prairie Ave.
Chicago, Ill."

From the evidence it appears that on or about September 30, 1947, the defendants moved into the house and that Mrs. Perry còntinued to reside there with them. It appears that very extensive repairs were made to the property by them and that they paid for these items, including plastering, decorating, plumbing, electrical and other repairs in excess of $4000. Likewise, it appears that they have complied with all the other terms of the contract with Mrs. Perry, paying $787 for her final expenses and funeral, and the sum of $250 to the Masonic Crippled Children Hospital. It further appears that she received the care which was provided for in the agreement.

The testimony with reference to the mental condition of Mrs. Perry at the time of these transactions is conflicting. Naturally, a person of her age may be allowed to have some peculiarities and yet be able to understand the nature and essentials of a business transaction. A careful review of the evidence presented by the respective parties as to mental capacity leads us to believe that Jessie Perry was mentally competeñt at the time she conveyed her property to the defendants. The master saw and heard the witnesses and we cannot say that his decision as to mental capacity is contrary to the manifest weight of the evidence.

We next consider the question of the fiduciary relationship between Jessie Perry and the defendant Russel A. Perry. The plaintiffs rely heavily upon the fact that Jessie Perry authorized him to enter her safety-deposit box and that he rendered to her many services in the way of paying bills for her and securing nurses and physicians for her. In handling these transactions for her it is evident that she regarded him as trustworthy; however, there is no proof in this record indicating that either of the defendants ever rendered her advice or counsel or that she relied upon their advice or judgment in the transaction of any business. It would appear that in handling the transactions entrusted to him, Russel A. Perry did occupy a fiduciary relationship

with Jessie Perry, since in conducting those transactions he could be considered her agent. We have held that the relationship between principal and agent is a fiduciary relation. (*Rieger* v. *Brandt,* 329 Ill. 21.) However, we have stated that the agent is a fiduciary only with respect to matters within the scope of the agency. (*Hickey* v. *Hickey,* 371 Ill. 476.) The question then presents itself as to whether the deeds of conveyance and contract entered into in this case were within the scope of any fiduciary relationship which existed between Jessie Perry and the defendants. Certainly, the transaction was not within the agency relationship occupied by Russel A. Perry, since there is no proof indicating he was ever the agent for Jessie Perry in regard to the sale or disposal of her home or for the repair or maintenance thereof. Therefore, as we stated in *Clark* v. *Clark,* 398 Ill. 592, "Where a fiduciary relationship does not exist as a matter of law, the relationship must be proved by clear and conclusive evidence." In order to establish a fiduciary relationship with reference to the transactions complained of in this case, it is necessary for the plaintiffs to establish the relationship by clear, convincing, unequivocal and unmistakable evidence which would lead only to one conclusion. *Johnson* v. *Lane,* 369 Ill. 135; *Neagle* v. *McMullen,* 334 Ill. 168.

We have carefully reviewed the evidence and we do not believe the finding of the master that no fiduciary relationship existed with reference to these transactions is contrary to the manifest weight of the evidence.

Situations involving that presented by this record occur frequently and it is only natural that when a person arrives at advanced years, and has no close relatives immediately available to assist him, he will rely upon others for assistance. Cases where no complaint is made regarding the transactions occurring between such people until after the death of one of them present a serious problem for the courts, because what at a later time may appear to be grossly

unfair was actually a proper transaction between the parties, and in other cases where it appears that the transaction was fair the real truth of the matter may be to the contrary. The evidence in this case indicates that the defendants, upon receiving title to the property, improved the same to the extent of more than $4000. In addition thereto they paid all of the final and funeral expenses of Mrs. Perry and made a contribution to the Crippled Children Hospital, in accordance with their contract with her, which amounted to in excess of $1000. Certainly, if Mrs. Perry had lived for a longer period of time after the transactions occurred, a court would have little doubt or trouble in deciding the matter, but in a case wherein the grantor dies within a relatively short time after such a transaction, it always appears that the other parties to the transaction have benefited unreasonably. The facts in this case indicate that at the time Mrs. Perry entered into this transaction she needed to be cared for and she was not satisfied with the care which she could receive outside of her own home. The evidence as to the condition of her home at that time indicates beyond all question that it was in considerable disrepair and no doubt it would have been very difficult for her to have obtained anyone to come into her home and live there with her under the circumstances of the home at that time. It does not appear from the record that she was able to pay for the repairs or improvements out of her own funds, or that she was able to hire the services of people to take care of her in her home without in some manner at least encumbering the home. The defendants have shown by adequate proof that the transaction was entered into fairly and that Mrs. Perry received adequate consideration for the transfer of her property. The decree of the circuit court of Cook County is, therefore, affirmed.

*Decree affirmed.*