(No. 31396.—

AMANDA STONE, Appellant, *vs.* ELMER A. STONE, Appellee.

*Opinion filed September 21, 1950—Rehearing denied Nov. 17, 1950.*

THOMAS J. WELCH, VERA M. BINKS, and R. SHERIDAN WELCH, all of Kewanee, for appellant.

JAMES H. ANDREWS, HARPER ANDREWS, and CAMPBELL ANDREWS, all of Kewanee, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

February 3, 1944, the plaintiff, Amanda Stone, brought an action in the circuit court of Henry County against the defendant, Elmer Stone, to set aside a deed upon the grounds of fraud in the procurement and undue influence. The cause was heard before the chancellor and, on December 14, 1948, a decree was entered dismissing the complaint for the want of equity. A freehold is necessarily involved,

and plaintiff's petition for leave to appeal within one year, filed December 12, 1949, has been granted.

Two motions by defendant, one to dismiss the petition for leave to appeal, and the other, to strike the report of proceedings, both pending when leave to appeal was granted, have been taken with the case. As one of three grounds for dismissing the petition, defendant contends that the affidavits in support of the petition do not show that plaintiff's failure to complete an appeal commenced within ninety days from the entry of the decree was not due to culpable negligence. The same argument was advanced in defendant's answer to the petition. This issue was necessarily disposed of adversely to defendant by our order granting leave to appeal.

Defendant further contends that the merit of plaintiff's claim for an appeal does not appear in the form of an affidavit, as required by section 76 of the Civil Practice Act and Rule 29 of this court. (Ill. Rev. Stat. 1949, chap. 110, pars. 200 and 259.29.) Section 76 provides that, upon motion filed within one year of the entry of a judgment or decree, a reviewing court may grant leave to appeal "upon a showing by affidavit" that there is merit in the claim for an appeal and that the failure to institute or complete an appeal as of right within ninety days of the judgment or decree did not result from culpable negligence. Rule 29 states that an application for leave to appeal under section 76 shall be by petition and affidavit, which shall be printed. The printed application filed by plaintiff consists of a formal motion or petition for leave to appeal, a statement of the case, points and authorities, suggestions in the nature of a brief, and two affidavits executed, respectively, by plaintiff and one of her attorneys. Plaintiff's affidavit contains a brief summary of her claim of merit in the appeal. The remainder of her argument as to the merit of the appeal is found in her statement of the case, points and authorities, and suggestions. This is not improper.

The statutory requirement of an affidavit is designed primarily to furnish the reviewing court with a sworn statement as to the circumstances attending the petitioner's failure to initiate or complete an appeal as of right, since, ordinarily, these facts lie outside the record. The claim of merit, however, being based on the application of legal principles to the facts appearing of record, no useful purpose would be served by presenting all material of this character in the form of an affidavit. Consequently, a concise statement of the merits of an appeal in the affidavit is sufficient to constitute compliance with section 76 of the Civil Practice Act. Although plaintiff might well have included a more detailed statement of her claim of merit in her affidavit, the affidavit presented is not insufficient, and there is no statute or rule of court prohibiting the elaboration of a claim of merit by the inclusion of a statement of the case, points and authorities, and suggestions in the nature of a brief in the application for leave to appeal.

As a third reason for dismissing the petition, defendant asserts that the only matters presented to show a claim of merit in the appeal are founded upon the report of proceedings which was not filed in the trial court until after the expiration of the time allowed by Rule 36. The motion to strike the report of proceedings is based upon the same contention. Recourse to the record discloses that plaintiff filed a notice of appeal within ninety days, but did not complete the appeal; that no extension of time for filing the report of proceedings was sought or allowed, and that the report was not filed in the trial court until more than eight months after the filing of the notice of an appeal within ninety days. Rule 36 (Ill. Rev. Stat. 1949, chap. 110, par. 259.36,) relates to the record on appeal, generally, and provides that the appellant shall, within ten days after notice of appeal has been filed, prepare and file a *praecipe* for record and that the report of proceedings shall be submitted to the trial judge for certification and

filed within fifty days after the notice of appeal has been filed, or within any extension or extensions of time granted. Rule 29 relates exclusively to applications for leave to appeal within one year. It provides that a *praecipe* for record may be filed without filing a notice of appeal and that the petition and affidavit for leave to appeal shall be accompanied by the record, an abstract of the record, and a notice of appeal. In the event the petition is granted, the order of allowance is endorsed on the notice of appeal and the notice, so endorsed, transmitted to the clerk of the trial court for filing. Although Rule 29 does not prescribe any time for filing the report of proceedings in the trial court, since the entire record must be filed in the reviewing court within one year from the date of the judgment or decree, the report of proceedings must, as a practical matter, be filed in the trial court within a period of less than one year.

Contrary to the contention of the defendant, Rule 36 does not apply to petitions for leave to appeal within one year. To so construe this rule would virtually destroy the right to petition for leave to appeal where, as here, the petitioner has previously filed a notice of appeal within ninety days and subsequently abandoned the first appeal. Where notice of appeal is filed within ninety days and the report of proceedings is filed within the time allotted by Rule 36, ordinarily there will be no occasion for a petition for leave to appeal wthin one year. On the other hand, if Rule 36 were applicable, and the report of proceedings were not filed within the time allowed, the petitioner would be faced with the prospect of filing an application for leave to appeal within one year based upon the common-law record, alone. To the extent that the construction of Rule 36 urged by defendant would tend to nullify the right to petition for leave to appeal where the petitioner has previously filed a notice of appeal within ninety days, it is contrary to the legislative intent manifested by the

1941 amendment to section 76 of the Civil Practice Act. Under section 76, as originally enacted, (Ill. Rev. Stat. 1933, chap. 110, par. 200,) the filing of a notice of appeal within ninety days was an absolute bar to a petition for leave to appeal within one year. (*Spivey Building Corp.* v. *Illinois Iowa Power Co.* 375 Ill. 128; *People ex rel. Bender* v. *Davis,* 365 Ill. 389.) In 1941, however, section 76 was amended to provide: "The fact that appellant may have filed a notice of appeal prior to the filing of his motion for leave to appeal shall not deprive the reviewing court of the power in its discretion to grant leave to appeal," (Ill. Rev. Stat. 1949, chap. 110, par. 200,) thus evidencing a legislative intent that the filing of a notice of appeal within ninety days shall have no bearing upon an application for leave to appeal within one year.

The motion to dismiss the petition for leave to appeal and the motion to strike the report of proceedings are both denied.

The undisputed facts relative to a determination of the present controversy upon its merits may be briefly stated: Plaintiff, Amanda Stone, widow of Frank Stone, is the stepmother of defendant, Elmer Stone, the only child of Frank Stone. In March, 1936, Frank and Amanda Stone acquired an improved eighty-acre farm near the city of Kewanee in joint tenancy and, in April, 1942, they purchased a lot in Kewanee, improved with a double house, and again took title as joint tenants. Upon the death of her husband on July 13, 1942, plaintiff, as surviving joint tenant, became the sole owner of the farm and the improved lot in the city. By his last will and testament, dated May 8, 1941, Frank Stone left all of his property, both real and personal, to plaintiff for life, with remainder to defendant, and nominated defendant as the executor of his will. The estate consisted of several vacant lots in Kewanee and a modest amount of personal property. Defendant qualified as executor on July 28, 1942. By a single

deed, dated August 21, 1942, and recorded on the following day, plaintiff conveyed both the farm and the house in the city to defendant, reserving to herself a life estate in each of the two properties. This is the instrument which plaintiff seeks to have set aside. The deed bears plaintiff's genuine signature and the acknowledgment was taken before Gregg Young, the family lawyer, in his capacity as a notary public. At the time the deed was executed, plaintiff was fifty-nine years of age and lived with a married sister. Defendant was then about thirty-five years of age and resided with his wife. Beyond this, practically everything is in dispute.

According to plaintiff, she did not know that the properties in question had been held in joint tenancy or that she had executed a deed to defendant until December, 1943, when an unnamed schoolmate approached her in a five-and-ten cent store and asked her whether it was true that Elmer Stone owned the farm and the house in the city. Whereupon, she engaged Vera Binks, one of her present attorneys, to investigate the matter and learned the facts, as recounted. Plaintiff testified that, after defendant qualified as executor, she signed several papers in connection with the estate; that one day, about the middle of August, 1942, defendant appeared at her sister's house, placed a folded paper on the table, handed her a pen, and, without reading or explaining the paper to her, told her to sign it; that, after she signed, defendant took the paper and left almost immediately, and that she did not receive any consideration for her conveyance.

Plaintiff added that, after her husband died, defendant took charge of the properties and told her she had nothing to say about their management and that she did not assert control over them until the fall of 1943. Although the inventory filed by defendant in his father's estate on January 11, 1943, lists both the farm and the house in the city as assets of the estate, without any notation of the fact

that they were held in joint tenancy, the significance of this fact is rendered somewhat obscure because plaintiff stated she never received a copy of the inventory. The final report and accounting was filed on June 11, 1943. In it, defendant stated he held the cash balance of the estate, amounting to $514, for plaintiff, as her agent. Plaintiff claimed that she never received either a copy of the report or the cash balance. Defendant showed that this fund was still in a bank account in the name of the estate and admitted he owed, but had not distributed, the money to plaintiff.

In all other respects, the evidence for defendant presents an entirely different view of the situation obtaining between the parties. For example, plaintiff testified that she was reared on a farm, attended school through sixth grade, worked for many years as a maid and in factories and, in general, gave the impression she was ignorant and inexperienced in business matters. The record discloses that plaintiff could both read and write; that, over a period of years, she had signed a number of legal papers with her husband at the office of Gregg Young, his lawyer; that she had executed a deed and other documents in connection with her father's estate, and that Young represented her in a partition action brought against her by her brothers and sisters. Defendant, although in the coal business, spent much of his time driving a truck. It further appears that Young was brought into the estate matter by plaintiff, not by defendant, and that plaintiff asked him to accompany her to a safe-deposit box, which she held jointly with her husband, for the purpose of removing his will. After the will was read, plaintiff told defendant he had been named executor and that he should see Young, which he did, and Young became attorney for defendant, as executor.

In opposition to plaintiff's asserted lack of knowledge that she owned the disputed properties in joint tenancy with her husband, bank records were introduced to show

that plaintiff went to their safe-deposit box on many occasions before her husband died. Two realtors stated that they showed the house in Kewanee to Frank Stone and plaintiff, and that plaintiff was present when the deal was closed and title taken in joint tenancy. Young testified he and plaintiff spent about twenty minutes examining the contents of the safe-deposit box on the day Frank Stone's will was removed. Defendant related that, after obtaining the contents of the box on August 5, 1942, he and plaintiff examined all the papers at his house; that plaintiff, upon finding her will, gave it to him for safe-keeping, and that, at the same time, she told him she was the sole owner of the farm and the house in the city and asked him to have a deed prepared reserving a life estate to her and conveying the real estate to him, the same as she had provided in her will. Plaintiff's will, dated May 8, 1941, the same date as her husband's will, was admitted in evidence. By this will, plaintiff devised and bequeathed all her property to her husband for life, with remainder to defendant, and nominated defendant as her executor.

Defendant further testified that, after plaintiff again spoke to him about the deed on a subsequent Sunday afternoon, he communicated with Young and, on August 21, 1942, he and his wife drove plaintiff to Young's office, but his wife did not go in with them. Young stated that plaintiff, upon entering his office, asked about the deed she had ordered; that he read, explained and handed it to her for examination; that, after saying something about the deed being in accordance with her husband's wishes, she signed it, and that he then executed the certificate of acknowledgment, as a notary public, and, in her presence, handed the deed to defendant and told him to have it recorded. Defendant testified to the same effect.

Defendant's wife corroborated his testimony about plaintiff's inspection of the contents of the deposit box at their house and her instructions to him about a deed on the

Sunday afternoon prior to their trip with plaintiff to Young's office on August 21. She also testified that plaintiff returned to their house for dinner on August 21, at which time plaintiff said the deed had been signed, everything was the way she wanted it, and that she was perfectly satisfied. In addition, William and Nellie Dickson, tenants on the farm from 1943 to 1946, testified that, on several occasions in 1943, plaintiff told them that her husband had left the farm to defendant, with the income to her for life, that this was satisfactory to her, and that defendant had a deed to the property.

With respect to other matters, defendant testified that plaintiff asked him to manage the real estate and that he so acted only in accordance with her request. As to the inventory and final report in the probate proceedings, defendant stated that Young prepared both documents for him and he and Young both asserted that plaintiff was given a copy of each report.

In rebuttal, plaintiff denied that she had ever examined the contents of the deposit box with defendant; that she instructed him to prepare the deed in question; that the deed had been read or explained to her or that she signed it in Young's office; that she had ever received a copy of the inventory or final report in her husband's estate, or that she had ever spoken to the tenants on the farm about a deed to defendant. In addition to her many other denials, and in conformity with her earlier testimony that her signature on defendant's bond, as executor, was a forgery and that she was duped into signing the deed of August 21, 1942, plaintiff also testified that, although the instrument purporting to be her will bore her genuine signature, she had not signed it knowingly and understandingly and that, up to the time the instrument was produced upon the trial, she did not know she had ever executed a will. This was in direct conflict with Young's previous testimony that plaintiff and her husband's will were discussed, drafted and

signed in his office on the same day, March 8, 1941, and that he explained plaintiff's will to her before she executed it. Young was a witness to the will. After plaintiff denied that she had knowingly signed a will, the other attesting witness, a secretary, who had worked for Young for only a few months in 1941, was brought to the trial from her home in Washington, D. C. She testified that she had typed and witnessed only a few wills during her short period of employment by Young and distinctly remembered the wills of Frank and Amanda Stone. She fully corroborated Young's testimony as to the execution of the wills.

On this state of the record, the chancellor found the issues for defendant and entered a decree accordingly. He also submitted a written opinion. As to the charge of fraud in the procurement, otherwise known as fraud in the inception or fraud in the *factum,* the chancellor found that plaintiff was not tricked into signing the deed of August 21, 1942, but that she executed it as her free and voluntary act, as testified to by Young and defendant. In this same connection, he further found that plaintiff was not a credible witness. Although there were no direct allegations of fraud in the inducement, the chancellor made an additional finding that there was no evidence that the deed was obtained by misrepresentation of material facts. This finding was based upon plaintiff's own testimony that defendant never discussed the properties with her and upon the fact that the inventory erroneously listing the properties as assets of Frank Stone's estate was not prepared or filed until long after the execution of the challenged deed. As to the allegations of the complaint relative to undue influence, the chancellor found there was no evidence that plaintiff actually reposed trust and confidence in defendant and that, even assuming a fiduciary relationship, the deed was not void because the resulting presumption that the deed was procured by the exercise of undue influence was contrary to the testimony of both plaintiff and defendant.

On the present appeal, plaintiff limits her argument to the single contention that defendant occupied a fiduciary relation to her and obtained the deed in question in violation of his duties as a fiduciary. A confidential relationship exists in all cases where one reposes trust and confidence in another who thereby gains a resulting influence and superiority over the other. (*Krieg* v. *Felgner*, 400 Ill. 113; *Brod* v. *Brod*, 390 Ill. 312.) The relationship may exist as a matter of law between attorney and client, guardian and ward, principal and agent, and the like, or it may be moral, social, domestic, or even personal. (*Kester* v. *Crilly*, 405 Ill. 425; *Clark* v. *Clark*, 398 Ill. 592.) Where the relationship does not exist as a matter of law it must be proved by clear and convincing evidence. *Galvin* v. *O'Neill*, 393 Ill. 475; *McGlaughlin* v. *Pickerel*, 381 Ill. 574.

To prove the existence of a fiduciary relation, plaintiff relies primarily upon the fact that defendant was the executor of his father's will and she was a beneficiary of the estate. The legal relationship existing between an executor and a beneficiary under a will is that of a trustee and *cestui que trust* and is fiduciary in character. (*Edwards* v. *Lane*, 331 Ill. 442; *Christensen* v. *Christensen*, 327 Ill. 448.) It is equally settled, however, that this relationship does not extend to all affairs and transactions between executors and beneficiaries. (*Stoke* v. *Wheeler*, 391 Ill. 429; *Ehrich* v. *Brunshwiler*, 241 Ill. 592.) The narrow question thus presented is whether the conveyance to defendant was within the scope of the bare, legal fiduciary relationship existing between the parties. The undisputed evidence shows that plaintiff acquired her interest in the farm and in the house in the city by deeds executed in March, 1936, and April, 1942, and that she did not take title to these properties as a devisee under the will of which defendant was executor. The real estate involved did not constitute any part of the estate of Frank Stone and the mere cir-

cumstance that the properties were erroneously listed as assets of the estate in the inventory filed January 11, 1943, without the notation that they were held in joint tenancy, does not change this fact. Furthermore, the record reveals that the deed of August 21, 1942, was not given in connection with estate matters and had nothing to do with the administration of the estate. Although plaintiff testified she signed the deed in the form of a folded paper, without being permitted to read it, and intimated she signed the paper as a routine estate matter, the chancellor found that plaintiff was an unreliable witness and that the deed was her free and voluntary act. The conclusion that plaintiff executed the deed with knowledge of its nature and effect and as a result of her deliberate, voluntary and intelligent desire is fully supported by the evidence, and the findings of the chancellor to this effect will not be disturbed. In addition, the certificate of the acknowledgment of a deed cannot be overcome by the unsupported testimony of the grantor. (*Finney* v. *White,* 389 Ill. 374; *Houlihan* v. *Morrissey,* 270 Ill. 66.) The conclusion is inescapable that the plaintiff's deed to defendant was not within the scope of the fiduciary relation existing between the parties.

Because plaintiff and defendant are related to each other, it should also be observed that a fiduciary relation does not obtain between parent and child as a matter of law, but must be proved by competent evidence. (*O'Malley* v. *Deany,* 384 Ill. 484; *Shuster* v. *Krueger,* 371 Ill. 543.) The mere fact of family relation does not, where the parent is the grantor and the child the grantee, raise any presumption of undue influence and there must be proof of fraud or undue influence, as a fact, in order to void a deed challenged on these grounds. (*Stewart* v. *Sunagel,* 394 Ill. 209; *Kasbohm* v. *Miller,* 366 Ill. 484.) There is no evidence in the record that a fiduciary relation, as a matter of fact, existed between the parties, a stepmother and her husband's son, at the time the deed was executed.

Even if it be conceded that a fiduciary relation existed between the parties, as a matter of fact, and that the deed of August 21, 1942, was within the scope of the relation, this concession does not aid plaintiff. The fact that a deed was made between parties standing in a fiducary relation does not necessarily require that the transaction be set aside. (*Masterson* v. *Wall*, 365 Ill. 102; *Allen* v. *McGill*, 311 Ill. 170.) Where a confidential relation exists and the dominant party is the grantee of a deed executed during the existence of the relationship, the conveyance between the parties is presumptively fraudulent, and the burden rests upon the grantee to show the fairness of the transaction and that it was equitable and just and did not proceed from undue influence. (*Schueler* v. *Blomstrand*, 394 Ill. 600; *Brod* v. *Brod*, 390 Ill. 312.) The evidence for defendant discloses that plaintiff knew she was the sole owner of the farm and the house in the city and that full disclosure of this fact was made to her prior to the execution of the deed. The record further shows that plaintiff ordered the deed prepared and that she executed it voluntarily, with full knowledge of its meaning and effect, for the purpose of disposing of the property in accordance with the apparent desire of her deceased husband. Although plaintiff retained a life estate in the properties and was not impoverished by her conveyance to defendant, she points to the absence of consideration as proof that the transaction was not fair and equitable. There is no rule of law, however, prohibiting a grantor from making a gift to one standing in a fiduciary relation to him, provided the gift is voluntary and not the result of undue influence. (*Gregory* v. *Gregory*, 323 Ill. 380; *Pillsbury* v. *Bruns*, 301 Ill. 578.) The record is barren of any evidence that plaintiff actually reposed trust and confidence in defendant, nor is there any credible evidence that defendant sought to exercise undue influence over plaintiff. Indeed, a careful consideration of all the facts and circumstances of the case discloses that

defendant has, by clear and convincing evidence, proved that the transaction assailed was fair, equitable and just, and did not proceed from undue influence.

Plaintiff also contends that defendant served in a second fiduciary capacity because he acted as her agent in managing the farm and the house in the city. The relationship between principal and agent is, of course, a fiduciary relation, (*Rieger* v. *Brandt,* 329 Ill. 21,) and an agent is a fiduciary with respect to matters within the scope of the agency. (*Hickey* v. *Hickey,* 371 Ill. 476.) Apart from the question of whether the deed was within the scope of the alleged agency, the burden of proof was upon plaintiff to prove the existence of the agency. (*Schmidt* v. *Shaver,* 196 Ill. 108.) This, she failed to do. According to her own testimony, shortly after her husband died, defendant told her she had nothing to say about the management of the properties and assumed control over them, or, as stated in her brief "defendant appointed himself agent." An ordinary agency of the type alleged here is a voluntary relation and cannot exist without the consent of both the principal and the agent. (Restatement of the Law of Agency, sec. 1.) Consequently, plaintiff's testimony to the effect that defendant assumed to act as agent for her without her consent is insufficient to prove the relationship asserted. Moreover, defendant's testimony that he was actually appointed agent is of no material assistance to plaintiff. Although defendant contends he was not so appointed until after the deed was executed, in point of fact the record is silent in this respect. Thus, even if plaintiff be allowed to ignore her own testimony and adopt the testimony of defendant, she must still be adjudged to have failed to sustain the burden of showing that an agency relationship existed at the time the deed was executed.

The decree of the circuit court of Henry County is affirmed.

*Decree affirmed.*