FIRST DIVISION
March 31, 2006

No. 1-04-1934

| | | |
|---|---|---|
| Estate of SHIRLEY A. LIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Deceased, | ) | Cook County. |
| | ) | |
| OWEN F. WARD, ROBERT DUNKLEBERGER, | ) | |
| DOLORES MESSMAN, NANCY FISCHER, | ) | |
| BERNICE MANKIWICZ, and MICHAEL | ) | |
| PIAMONTE, | ) | |
| | ) | |
| Petitioners-Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KWIATT & RUBEN, LTD., S. HALA SOUMAN, | ) | |
| LARRY MAGILL, LEVENFELD PERLSTEIN, | ) | |
| and SHARON RUDNICK, | ) | |
| | ) | |
| Respondents-Appellees, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| INTERNATIONAL FIDELITY INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Respondents-Appellees and | ) | |
| Cross-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KENNETH RUDNICK, | ) | |
| | ) | Honorable |
| Respondent-Appellee and | ) | Robert E. Cusack, |
| Cross-Appellee. | ) | Judge Presiding. |

JUSTICE BURKE delivered the opinion of the court:

Petitioners Owen Ward (Owen) and Robert Dunkleberger, Dolores

Messman, Nancy Fischer, Bernice Mankiwicz, and Michael Piamonte

1-04-1934

(Other Heirs)[1] appeal from orders of the circuit court granting the motion for summary judgment of respondent, the independent administrator of the Estate of Shirley Lis (Estate), Sharon Rudnick (Sharon), on petitioners' petition to surcharge the administrator for recoupment of a Harris Bank retirement plan (Plan) that was distributed solely to Kenneth Rudnick, Shirley's maternal cousin, which petitioners alleged should have been distributed to the Estate, and granting respondents Kwiatt & Ruben, Ltd., S. Hala Souman, Larry Magill, and Levenfeld Perlstein's (the Attorneys) motions to dismiss petitioners' petition to surcharge the Attorneys on the same basis.[2] On appeal, petitioners contend that the trial court erred in granting the Attorneys' motions to dismiss because petitioners set forth sufficient facts to state a cause of action for breach of fiduciary duty and because the Attorneys' arguments in support of dismissal, that the Plan was not part of the Estate, that Harris Bank made its own independent decision with respect to distribution of the Plan, and that petitioners' claim was preempted by ERISA, were not sufficient to support dismissal. Petitioners further contend that the trial court erred in granting summary judgment in favor of Sharon because genuine issues of material fact

---

[1] At times during the trial court proceedings, Owen proceeded by himself on matters, the Other Heirs proceeded on their own, and, at other times, all petitioners filed documents as one. Where Owen acted alone or the Other Heirs acted alone, we so indicate.

[2] On March 4, 2005, we granted petitioners' motion to voluntarily dismiss the appeal against Levenfeld Perlstein.

2

existed and Sharon's arguments, like the Attorneys, which were essentially the same, were not sufficient to warrant summary judgment. International Fidelity Insurance Company (Fidelity) has filed a cross-appeal contending that the trial court properly granted summary judgment in favor of Sharon and, in the alternative, if we reinstate the petition to surcharge the administrator, its third-party complaint for assumpsit against Kenneth should be reinstated. For the reasons set forth below, we affirm.

## STATEMENT OF FACTS

This lawsuit arose as a result of the death of Shirley Lis on November 11, 1999. Subsequent to her death, it was discovered that Shirley had a profit sharing plan (Plan) through her former employer Harris Bank. At the time of her death, Agnes Rudnick, Shirley's mother, was designated as the primary beneficiary. Mae Rudnick, Shirley's maternal aunt, was designated as the contingent beneficiary. Both beneficiaries predeceased Shirley, yet Shirley had not changed the designations. On November 16, Rosemary Fuller, an employee of Harris Bank, wrote to Sharon, Shirley's maternal first cousin once removed, with respect to the Plan, indicating that Mae was the named contingent beneficiary and requesting her address. At this time, Harris Bank was unaware that Mae predeceased Shirley.

On January 5, 2001, Sharon filed a petition for letters of

3

administration, identifying her father, Kenneth Rudnick, and her uncle, Stanley Rudnick, as heirs, and valuing the Estate at $234,000. Sharon indicated that other heirs were unknown. On January 18, an attorney for Owen, Shirley's paternal first cousin, faxed a letter to Hala Souman, one of Sharon's attorneys, enclosing a counterpetition for letters of administration. On January 19, Owen's attorney appeared in court to present his counterpetition, at which time, Sharon objected. Sharon then filed her letters of administration which identified Kenneth, herself, her sister Susan and her brother Steven as heirs as well as unknown other heirs. Sharon was appointed independent administrator and an order declaring heirship was entered that identified Kenneth and Stanley (whereabouts unknown) as the maternal heirs, each entitled to one-half of Shirley's estate, and unknown paternal heirs.

On February 13, Souman wrote to Nancy Harrison, a benefits administrator at Harris Bank, asking her to distribute the Plan to Kenneth. Thereafter, Souman wrote to Owen's attorney, requesting that he withdraw the counterpetition so as not to deplete the Estate. The letter further indicated that two retirement accounts had originally been included in the Estate value, which did not belong to the Estate since they had named beneficiaries. According to Souman, the Estate was actually valued at approximately $75,000. On March 28, Souman again wrote to Harrison, requesting disbursement of the Plan to Kenneth. On March 30, Owen's attorney appeared in court on a petition to vacate the appointment of Sharon

as the independent administrator and to file a counterpetition to appoint Owen as the independent administrator and to amend the order of heirship. Owen agreed to withdraw the counterpetition and petition to vacate the appointment of administrator. Thereafter, the trial court entered an amended order declaring heirs, vacating its January 19 order, adding Owen as an heir entitled to one-half of Shirley's estate and amending Stanley and Kenneth's share to one-quarter each. Subsequent to the hearing, Owen's counsel wrote to Souman, indicating he had withdrawn the counterpetition and requesting information as to why the Estate had decreased in value.

On April 26, an attorney representing Michael Piamonte, Stanley's grandson, wrote to Larry Magill, another one of Sharon's attorneys, stating that Piamonte was one of Shirley's heirs. On May 17, Harrison wrote to Souman, indicating the Plan was worth $150,638.96, that because Mae predeceased Shirley, the next beneficiary was Kenneth, and that the Plan had been distributed to Kenneth. On May 22, Souman wrote to Owen's attorney, explaining that two retirement accounts had incorrectly been included in the Estate because they had named beneficiaries and their withdrawal from the Estate was the reason it had a lesser value.

On July 31, Owen's attorney met with representatives of Harris Bank. Thereafter, Harris Bank wrote to Owen's attorney, indicating that the Plan had been distributed to Kenneth in accordance with Plan documents. On August 17, Owens moved to remove Sharon as administrator, alleging that she had breached her fiduciary duties

5

to preserve and collect the assets of the Estate and because she failed to advise Harris Bank that other heirs existed. Owens further alleged that the Plan was part of Shirley's estate. On the same day, Bernice Mankiwicz, another maternal cousin of Shirley's, filed a motion to amend the heirship order, identifying herself and six others, as heirs. The trial court then entered a second amended order declaring heirs, adding Bernice and the others as heirs. In this order, the court further stated that the distribution of the Plan to Kenneth was improper and was to be restored to the Estate. On August 29, Sharon filed a motion to reconsider the August 17 order. Thereafter, Fidelity, Sharon's surety, filed an appearance.

On September 5, the trial court held a hearing on Sharon's motion to reconsider the order of August 17. At this hearing, the trial court found that the Plan was an asset of the Estate; Harris Bank failed to take into consideration the Other Heirs in making its distribution decision; and that the money had to come back to the Estate. On October 17, Harris Bank filed a notice that the action had been removed to the federal district court based on ERISA.

On April 15, 2002, Sharon filed a motion to vacate the trial court's order of September 5, 2001, stating that petitioners had acknowledged before the federal district court that the Plan was not part of the Estate. On April 17, the trial court granted Sharon's motion, vacating its August 17 and September 5, 2001,

6

1-04-1934

orders on the basis that related issues were pending before the federal district court.

On July 16, a representative of Harris Bank wrote to Kogut, counsel for the Other Heirs, with respect to the federal court case and the heirs' claim for benefits. Harris Bank advised Kogut that the Harris Benefits Administrative Committee (Committee), a committee that reviewed contested claims for benefits and denials of benefits, had considered the heirs' claim under the Plan, particularly their position that the Plan should be paid to the Estate. Harris Bank indicated that, according to the Plan documents, its staff made the determination to distribute the Plan to Kenneth because he was within the class of persons eligible to receive the distribution. Accordingly, the Committee denied the heirs' claim for distribution to the Estate. The letter further advised the heirs that they had a right to appeal the decision and could request, in writing, a review by September 20.

On September 10, the federal district court entered a minute order, indicating that Harris Bank had agreed to withdraw its complaint for declaratory judgment against the heirs under ERISA and that petitioners' counterclaim seeking a declaration that the distribution had been made in error would also be withdrawn by agreement. The same day, petitioners filed their petition to surcharge Sharon based on her breach of fiduciary duties to them. Petitioners alleged that Sharon owed a fiduciary duty to the heirs to act on behalf of and in the best interest of the Estate, which

7

duty she had breached by directing that the Plan be paid to Kenneth, even though it could have been paid to the Estate, and by, at the same time, misrepresenting to Owen that she was protecting his interests. Petitioners alleged that they were damaged in that there was a significant reduction in the value of the Estate.

Thereafter, Fidelity filed a petition for leave to file a third-party complaint for assumpsit against Kenneth, as well as a petition for collateral and reimbursement of attorney fees, expenses, and losses against Sharon. On October 30, Sharon filed a motion to dismiss the petition to surcharge the administrator. According to Sharon, she was entitled to a dismissal because the trial court had already determined she had not acted improperly and because, by not appealing Harris Bank's Committee review decision and abandoning their federal claim, petitioners waived their right to seek reimbursement of the Plan from her. The trial court entered an order that day, granting Fidelity leave to join Kenneth as a third-party defendant and to file its third-party complaint, granting Fidelity leave to file its petition for collateral against Sharon, and granting Sharon leave to file her motion to dismiss. Fidelity then filed its third-party complaint for assumpsit against Kenneth.

On November 20, Owen and the Other Heirs responded to Sharon's motion to dismiss the petition to surcharge the administrator, after which Sharon filed a reply in support of her motion. Sharon also filed a motion to dismiss Fidelity's petition for collateral.

8

On January 23, 2003, the trial court denied Sharon's motion to dismiss the petition to surcharge. On April 4, Kenneth filed a motion to dismiss Fidelity's third-party complaint. Thereafter, Fidelity filed a response and affirmative defenses to the petition to surcharge the administrator. In their response, petitioners stated that the Plan should and could have been an asset of the Estate but for the wrongful conduct of Sharon.

In May, Sharon filed her first and final accounting, indicating total assets and receipts in the Estate of $82,399.05 and total disbursements in the same amount, including attorney fees of $65,814.42, thus leaving no funds to distribute to the heirs. Petitioners objected to the accounting. On May 28, the trial court entered an order converting the Estate to a supervised estate.

On July 30, petitioners filed a petition to surcharge the Attorneys of the Estate, based on their breach of fiduciary duty and a conflict of interest. Petitioners alleged that, contrary to their duty owed to the Estate and heirs, the Attorneys requested that the Plan be distributed to Kenneth even though it could have been paid to the Estate. Again, petitioners alleged damages in the reduction in value of the Estate. On November 12, counsel appeared on behalf of Levenfeld Perlstein and filed a motion to dismiss the petition to surcharge the Attorneys. On December 5, Sharon filed a motion for summary judgment on the petition to surcharge the administrator. Kenneth filed a joint motion to dismiss Fidelity's third-party complaint pursuant to section 2-619(a)(9) of the Code

of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2004)). The bases of both motions were: (1) petitioners' inability to prove damages to the Estate; (2) preemption by ERISA; (3) failure to exhaust administrative remedies; and (4) lack of proximate cause based on Harris Bank's independent decision on the distribution.

On December 12, counsel appeared on behalf of Magill, on December 29, counsel appeared on behalf of Kwiatt & Ruben, and on February 4, 2004, counsel appeared on behalf of Souman. Thereafter, Kwiatt & Ruben and Souman filed a motion to dismiss the petition to surcharge the Attorneys pursuant to sections 2-615 and 2-619 of the Code on the bases that: (1) the Plan was not an asset of the Estate; (2) Harris Bank made an independent decision with respect to the distribution; and (3) the Attorneys committed no wrongdoing. Magill followed suit, filing a motion to dismiss pursuant to sections 2-615 and 2-619. With respect to section 2-619, Magill adopted Sharon's motion for summary judgment and argued, with respect to section 2-615, that there was no evidence of breach of fiduciary duty or conflict of interest. Thereafter, petitioners filed a response to Sharon's motion for summary judgment, a response to Kwiatt & Ruben and Souman's motion to dismiss, and a response to Magill's motion to dismiss. The movants then filed replies in support of their respective motions. The discovery depositions of Nancy Harrison and Hala Souman, as well as "Harris' Benefits Claim Briefing Shirley Lis' Sharing Plan Benefits Document" were offered in support of the various motions. Because

10

the contents of these are not vital to our decision, we do not detail them.

A hearing was held on the various motions on May 10. At the hearing, the trial court indicated that the conduct of Harris Bank was not amenable to a finding by the trial court. However, the trial court denied Sharon's motion for summary judgment, finding that a hearing was necessary. At a subsequent hearing on the Attorneys' motions to dismiss, on June 7, the trial court noted that Levenfeld Perlstein was being dismissed without prejudice by agreement of the parties. With respect to the remaining motions, the trial court found that the Plan was subject to federal regulations and rules and that it was not an asset of the Estate. Accordingly, the court concluded that it had no jurisdiction to "touch it." The trial court entered an order granting Kwiatt & Ruben, Souman, Magill, and Levenfeld Perlstein's motions to dismiss with prejudice. This order included Rule 304(a) language. Sharon then orally moved to reconsider the trial court's order of May 10.

On July 2, the trial court entered an order granting Sharon's motion to reconsider, granting summary judgment in her favor, and finding that the Plan was "governed by ERISA and therefore not subject to the purview of this Probate Court." The trial court also dismissed Fidelity's third-party complaint in assumpsit against Kenneth. This appeal followed.

ANALYSIS

11

To state a cause of action for breach of fiduciary duty, a plaintiff must allege and ultimately prove (1) a fiduciary duty on the part of the defendant, (2) a breach of that duty, (3) an injury, and (4) a proximate cause between the breach and the injury. *Prime Leasing, Inc. v. Kendig*, 332 Ill. App. 3d 300, 313, 773 N.E.2d 84 (2002).

## I. Petition to Surcharge Administrator

A motion for summary judgment is properly granted when the pleadings, depositions, admissions, and affidavits on file establish that no genuine issue as to any material fact exists and, therefore, the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2004); *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 530, 675 N.E.2d 897 (1996). The purpose of summary judgment is to determine whether a fact question exists, not to try a question of fact. *Starr v. Gay*, 354 Ill. App. 3d 610, 613, 822 N.E.2d 89 (2004); *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 517, 622 N.E.2d 788 (1993). A defendant who moves for summary judgment may satisfy its burden of production in two ways. 4 R. Michael, Illinois Practice §40.3, at 271-72 (1989). First, the defendant can affirmatively show that some element of the case must be resolved in its favor. *McCoy ex rel. Jones v. Chicago Housing Authority*, 333 Ill. App. 3d 305, 308, 775 N.E.2d 168 (2002). Alternatively, the defendant can establish that the plaintiff cannot prove an essential element of the cause of

action. *McCoy*, 333 Ill. App. 3d at 308-09. We review the trial court's granting of a summary judgment motion *de novo*. *McNamee v. State of Illinois*, 173 Ill. 2d 433, 438, 672 N.E.2d 1159 (1996).

Petitioners contend that the trial court erred in granting summary judgment in favor of Sharon because fact questions existed as to whether Sharon breached her fiduciary duty to them as well as to whether there was a proximate cause between Sharon's breach of fiduciary duty and their injuries. Sharon contends that the trial court properly granted summary judgment in her favor because petitioners' claim is preempted by ERISA, petitioners failed to exhaust their administrative remedies, her alleged breach of fiduciary duty was not a proximate cause of petitioners' alleged injury since Harris Bank made an independent decision with respect to the distribution, and petitioners could not establish damages since the Plan would never have been distributed to the Estate.

The purposes of administrating an estate are to conserve the personal assets of the estate, including the collection of all debts due to the decedent; to pay all debts and taxes owed by the decedent and her estate; and to properly distribute the residue among the heirs at law according to the terms of the decedent's will or, absent a will, the statute of descent and distribution. 19 Ill. Law & Practice *Executors and Administrators* §2, at 11 (1991); *In re George's Estate*, 335 Ill. App. 509, 511, 82 N.E.2d 365 (1948). In this regard, generally it is the duty of an

executor or administrator to perform these tasks (*In re Estate of Wallen*, 262 Ill. App. 3d 61, 72, 633 N.E.2d 1350 (1994)) and, in so doing, she should carry out the wishes of the decedent and act in the best interest of the estate.  19 Ill. Law & Practice *Executors and Administrators* §4, at 15.   "The relationship between an executor or administrator and a beneficiary is that of trustee and cestui que trust, and is fiduciary in character."  19 Ill. Law & Practice *Executors and Administrators* §4, at 15; *Stoke v. Wheeler*, 391 Ill. 429, 434, 63 N.E.2d 492 (1945); *Wallen*, 262 Ill. App. 3d at 72; *Greene v. First National Bank of Chicago*, 162 Ill. App. 3d 914, 921, 516 N.E.2d 311 (1987).   However, this fiduciary relationship "does not extend to all affairs and transactions between executors or administrators and beneficiaries."  19 Ill. Law & Practice *Executors and Administrators* §4, at 17; *Stone v. Stone*, 407 Ill. 66, 77, 94 N.E.2d 855 (1950); *Stoke*, 391 Ill. at 434; *Ehrich v. Brunshwiler*, 241 Ill. 592, 597, 89 N.E. 799 (1909).  Rather, the relationship is fiduciary only "so far as the administration of an estate is involved."  *Stoke*, 391 Ill. at 434; *In re Burger's Estate*, 16 Ill. App. 2d 510, 514, 149 N.E.2d 105 (1958).   See also *Brown v. Brown*, 62 Ill. App. 3d 328, 333, 379 N.E.2d 634 (1978) (holding there was no question that a fiduciary relationship existed between the defendant and his mother as to all transactions concerning the assets of a trust of which he was a trustee and his mother a beneficiary).   Stated differently, the transaction at issue must fall within the scope of the fiduciary

14

relationship. *Brown*, 62 Ill. App. 3d at 333 (the trial court must ascertain if a fiduciary relationship, broad enough to encompass the complained of transaction, exists). If the transaction at issue has no connection or reference to the estate, no fiduciary relationship exists as to it. *Brown*, 62 Ill. App. 3d at 333. "[W]hether a fiduciary relation exists between an administrator and a beneficiary, apart from the legal relation existing because of the administration, is a matter of fact, dependent not on the technical relation of trustee and *cestui que trust*, but upon the confidence reposed on one side and resulting superiority on the other." *Stoke*, 391 Ill. at 434; *Ehrich*, 241 Ill. at 597; *In re Kapraun's Estate*, 21 Ill. App. 2d 231, 243, 157 N.E.2d 700 (1959).

Two cases are instructive. In *In re Kapraun's Estate*, Frank Kapraun died testate on April 1, 1953, leaving five children, Karl, Bertha, Anna, Edward, and Phillip. *Kapraun*, 21 Ill. App. 2d at 233-34. Under Frank's will, his estate, after being converted to cash, was to be divided equally among all of his children. *Kapraun*, 21 Ill. App. 2d at 234. Phillip was nominated as executor. On April 12, 1954, Karl, Bertha, and Anna (the plaintiffs) filed a complaint to establish a constructive trust on certain real estate previously owned by Frank. With respect to this real estate, Frank had conveyed same to Phillip on June 7, 1949. The plaintiffs maintained that Phillip was in a fiduciary relationship with Frank at the time of the conveyance and that he purchased it for less than market value. *Kapraun*, 21 Ill. App. 2d

15

at 234. In finding that Phillip owed no fiduciary duty to his siblings with respect to the property, the court stated: "[T]his real estate at the time of [Frank's] death was ostensibly no part of his estate that could be or should be inventoried or with which the executor was concerned." *Kapraun*, 21 Ill. App. 2d at 239. More specifically, the court stated that "[u]nless the real estate was part of the decedent's estate[,] the executor under this will did not take it, had no power or directions as to it, and the five children had no interest under the will in the proceeds of any converting thereof." *Kapraun*, 21 Ill. App. 2d at 239. The court then noted the general rule with respect to a fiduciary relationship, stating: "There existed, of course, as a matter of law, a normal fiduciary relationship between the executor, Philip H. Kapraun, and the other beneficiaries, but only so far as the administration of the estate was concerned," and concluded that "we do not perceive how, under the circumstances, the executor has been faithless to the fiduciary relationship so far as the administration of the estate is concerned." *Kapraun*, 21 Ill. App. 2d at 243.

Another instructive case is *Stone*. Frank Stone, who was married to Amanda Stone (the plaintiff), died on July 13, 1942. *Stone*, 407 Ill. at 71. Frank had one son, Elmer (the defendant), and Amanda was his stepmother. In March 1936 and April 1942, Frank and Amanda bought two different parcels of property. Upon Frank's death, Amanda became the sole owner as the joint tenant. Frank's

will provided that everything was to go to Amanda for life, with a remainder interest in Elmer. Elmer was also the nominated executor and erroneously included the properties on his first inventory. *Stone*, 407 Ill. at 71. On August 21, 1942, Amanda conveyed both parcels of property to Elmer, reserving a life estate for herself. *Stone*, 407 Ill. at 72. Thereafter, she sought to set aside the conveyances, claiming she did not know she was conveying the properties to Elmer and that he had fraudulently induced her to do so. *Stone*, 407 Ill. at 72. The trial court concluded that Amanda had not been tricked into conveying the properties to Elmer and, rather, had done so freely and voluntarily. *Stone*, 407 Ill. at 76. On appeal, Amanda maintained that Elmer stood in a fiduciary relationship with her and had obtained the deeds in violation of his fiduciary duties. *Stone*, 407 Ill. at 77. The Illinois Supreme Court disagreed, reciting the general principles with respect to a fiduciary relationship between an executor and beneficiary. According to the *Stone* court, "[t]he narrow question thus presented is whether the conveyance to defendant was within the scope of the bare, legal fiduciary relationship existing between the parties." *Stone*, 407 Ill. at 77. In concluding that there was no fiduciary relationship, the court noted that

> "[t]he undisputed evidence shows that plaintiff acquired her interest in the [properties] by deeds executed in March, 1936, and April, 1942, and that she did not take

17

> title to these properties as a devisee under the will of which defendant was executor. The real estate involved did not constitute any part of the estate of Frank Stone and the mere circumstance that the properties were erroneously listed as assets of the estate in the inventory filed January 11, 1943, *** does not change this fact. Furthermore, the record reveals that the deed of August 21, 1942, was not given in connection with estate matters and had nothing to do with the administration of the estate." *Stone*, 407 Ill. at 77-78.

Ultimately, the court held that "[t]he conclusion is inescapable that the plaintiff's deed to defendant was not within the scope of the fiduciary relation existing between the parties." *Stone*, 407 Ill. at 78.

In order for petitioners here to succeed, they were required to show, at the least, that Sharon owed a fiduciary duty to them. The question then is whether the distribution of the Plan was within the scope of the fiduciary duty Sharon owed to petitioners, as Shirley's heirs, in her capacity as administrator. We find that it was not. As in *Kapraun* and *Stone*, the Plan was not part of Shirley's estate and never would have been. Petitioners concede this fact. Specifically, there is no dispute that the Plan would never have been distributed to the Estate, according to Harrison's

18

1-04-1934

testimony, since at least one living blood relative existed. Likewise, petitioners conceded both before the federal court and this court that the Plan was not part of the Estate. As such, petitioners had no interest in the Plan *vis-a-vis* Shirley's estate or Sharon's representation of same as administrator. The fact that the Plan was erroneously listed on the inventory does not change the fact that it was not an asset of the Estate. Similarly, as in *Stone*, despite the fact Sharon and/or her attorneys were involved with the distribution in some manner, the distribution was not connected to Estate matters and had nothing to do with the administration of Shirley's estate. Accordingly, the conclusion here is as "inescapable" as it was in *Stone*; the distribution of the Plan was not within the scope of the fiduciary relationship existing between Sharon as administrator and petitioners and, thus, petitioners could not establish any breach of duty, let alone a duty. As such, because petitioners could not prove an essential element of their cause of action, we find that the trial court properly granted summary judgment in favor of Sharon.

II. Petition to Surcharge Attorneys

A motion to dismiss pursuant to section 2-615 of the Code challenges the legal sufficiency of a plaintiff's complaint. *Joseph v. Chicago Transit Authority*, 306 Ill. App. 3d 927, 930, 715 N.E.2d 733 (1999). When reviewing the sufficiency of a complaint, the court must accept as true all well-pleaded facts and all

19

reasonable inferences that can be drawn from those facts. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86, 672 N.E.2d 1207 (1996). The complaint should not be dismissed unless it is clear that the plaintiffs could prove no set of facts that would entitle them to relief. *Bryson*, 174 Ill. 2d at 86-87. We review the trial court's decision on a motion to dismiss *de novo*. *Neade v. Portes*, 193 Ill. 2d 433, 439, 739 N.E.2d 496 (2000).

Petitioners first contend that they stated a valid cause of action against the Attorneys and, thus, the trial court erred in granting the Attorneys' motions to dismiss. According to petitioners, the Attorneys owed a duty to all of the heirs since they were hired for the benefit of the Estate. Petitioners maintain that the Attorneys breached their duty by directing that the Plan proceeds be paid to Kenneth.[3] According to petitioners,

---

[3]Although petitioners maintain before this court that the Attorneys were negligent in that they failed to protect petitioners' interests, failed to tell Harris Bank about other heirs, failed to tell petitioners that the named beneficiaries of Shirley's Plan predeceased her, thus, there were no named beneficiaries, and failed to tell petitioners of the details of the Plan prior to the time it was distributed to Kenneth, as the Attorneys argue in their briefs to this court, petitioners did not

this breach proximately caused injuries in the loss of the Plan to the Estate to which they were entitled under the Plan documents.

The Attorneys generally make the same contentions: they committed no wrongdoing as the trial court determined and, therefore, there could be no breach of duty; petitioners could not establish proximate cause because Harris Bank made an independent decision with respect to the distribution; and petitioners could not establish damages to the Estate because the Plan would never have been distributed to it, and, thus, the trial court properly granted their motions to dismiss. Only Magill addresses the issue of duty, maintaining that the Attorneys owed no fiduciary duty to petitioners as potential beneficiaries of the Estate since there was no evidence that Sharon's relationship with the Attorneys was intended to confer a benefit on them and because they took a position adverse to Sharon.

. In order to ascertain the nature of an estate attorney's duty, "it is necessary *** to examine the purposes of an administrator of

---

allege a cause of action based on negligence in the trial court and raise this issue for the first time on appeal. As such, it is not properly before this court and will not be addressed. *In re B.K.*, 362 Ill. App. 3d 324, 329, 839 N.E.2d 1111 (2005).

an estate, thereby indicating the role of an administrator's attorney." *People v. Coslet*, 67 Ill. 2d 127, 133, 364 N.E.2d 67 (1977). Again, the purposes of administrating an estate is to marshall the assets of the estate, pay the debts of the decedent and estate, and to distribute the residue of the estate to the legal heirs. *In re George's Estate*, 335 Ill. App. at 511. "[T]he primary purpose of the attorney's relationship with the executor [is] to assist the executor in the proper administration of the estate." *Jewish Hospital of St. Louis, Missouri v. Boatmen's National Bank of Belleville*, 261 Ill. App. 3d 750, 763, 633 N.E.2d 1267 (1994).

The leading case on an attorney's duty to a third-party nonclient, such as the situation presented here, is *Pelham v. Griesheimer*, 92 Ill. 2d 13, 440 N.E.2d 96 (1982). In *Pelham*, the defendant attorney was retained to represent Loretta Ray in a divorce proceeding against her husband, George. *Pelham*, 92 Ill. 2d at 16. The plaintiffs were the minor children of Loretta and George. The divorce decree required George to maintain all four children as primary beneficiaries on his life insurance policies, including the one he had with his employer. George remarried and subsequently named his new wife as the primary beneficiary on his employment life insurance policy. *Pelham*, 92 Ill. 2d at 16. The plaintiffs filed a lawsuit against the defendant, alleging that he was negligent because he failed to advise the employer or the

1-04-1934

insurance carrier of the decree provision. *Pelham*, 92 Ill. 2d at 16-17. It was the plaintiffs' position that they were third-party beneficiaries of the contract between the defendant and Loretta. *Pelham*, 92 Ill. 2d at 17. The trial court dismissed the plaintiffs' action, finding there was no attorney-client relationship between them and the defendant, which was affirmed by the appellate court. *Pelham*, 92 Ill. 2d at 16. The Illinois Supreme Court also affirmed. However, it disagreed with the appellate court's finding that no attorney-client relationship existed solely based on a lack of privity between the plaintiffs and the defendant. Specifically, after noting the general rule that an attorney is not liable to third-party nonclients, the court stated that it did not consider privity to be "an indispensable prerequisite to establishing a duty of care between a non-client and an attorney in a suit for legal malpractice." *Pelham*, 92 Ill. 2d at 18. Despite this finding, the court noted:

> "While privity of contract has been abolished in many areas of tort law, the concern is still that liability for negligence not extend to an unlimited and unknown number of potential plaintiffs. In the area of legal malpractice the attorney's obligations to his client must remain paramount. In such cases the best approach is that the plaintiffs must allege and prove facts demonstrating that they

23

are in the nature of third-party intended beneficiaries of the relationship between the client and the attorney in order to recover in tort. [Citations.] By this we mean that to establish a duty owed by the defendant attorney to the nonclient the nonclient must allege and prove that the intent of the client to benefit the nonclient third party was the primary or direct purpose of the transaction or relationship." *Pelham*, 92 Ill. 2d at 20-21.

By adopting the "intended to directly benefit" test, the *Pelham* court believed that "the purpose of limiting the scope of the duty owed by an attorney to nonclients" was furthered. *Pelham*, 92 Ill. 2d at 21. Accordingly, the court held

"that, for a nonclient to succeed in a negligence action against an attorney, he must prove that the primary purpose and intent of the attorney-client relationship itself was to benefit or influence the third party. Under such proof, recovery may be allowed, provided that the other elements of a negligence cause of action can be proved." *Pelham*, 92 Ill. 2d at 21.

However, the *Pelham* court further found:

24

> "Where a client's interest is involved in a proceeding that is adversarial in nature, the existence of a duty of the attorney to another person would interfere with the undivided loyalty which the attorney owes his client and would detract from achieving the most advantageous position for his client. [Citation.] Our code of professional responsibility requires that a lawyer represent his client with undivided fidelity (84 Ill. 2d R. 5-107), and Canon 7 provides that a lawyer should represent a client zealously within the boundaries of the law (84 Ill. 2d Canon 7)." *Pelham*, 92 Ill. 2d at 22-23.

As such, the court held that "[i]n cases of an adversarial nature, in order to create a duty on the part of the attorney to one other than a client, there must be a *clear indication* that the representation by the attorney is intended to directly confer a benefit upon the third party." (Emphasis added.) *Pelham*, 92 Ill. 2d at 23. Applying the "intent to directly benefit" test to the facts presented to it, the *Pelham* court concluded there was no evidence that the plaintiffs were direct third-party beneficiaries. Specifically, the court noted:

> "The attorney was hired primarily for the

25

purpose of obtaining a divorce, property settlement, and custody of the minor children for Loretta Ray, not to represent her children's interest. The plaintiffs herein are, at best, only incidental beneficiaries in this situation. That George Ray name the children as beneficiaries of the policy cannot be described as the primary reason that Loretta Ray retained the defendant to be her attorney." *Pelham*, 92 Ill. 2d at 23.

Ultimately, the court stated that "[u]nder the facts as pleaded, we hold that no duty in negligence was owed by the wife's attorney to his client's children; hence, no cause of action was stated" since the plaintiffs failed to plead and prove that the relationship between the attorney and his client was entered into for their primary and direct benefit." *Pelham*, 92 Ill. 2d at 24-25.

The *Pelham* rule was applied in an estate case in *Ogle v. Fuiten*, 112 Ill. App. 3d 1048, 445 N.E.2d 1344 (1983), where the intended beneficiaries of a will sued the testator's attorney, maintaining that he was negligent in failing to include a contingency in the will that in fact occurred, which resulted in intestate devolution. *Ogle*, 112 Ill. App. 3d at 1049. The bases for the plaintiffs' claims were negligence and third-party beneficiary breach of contract. *Ogle*, 112 Ill. App. 3d at 1049. After outlining the rule espoused in *Pelham*, that "a proper

allegation of duty necessary to sustain a nonclient's action against an attorney for malpractice requires an allegation that the intent of the client to benefit the nonclient-third party was the primary or direct purpose of the transaction or relationship," the court concluded that the plaintiffs' allegations sufficiently stated a cause of action under both theories because it was clear that the testator intended to benefit them and the attorney was well aware of this. *Ogle*, 112 Ill. App. 3d at 1052-53.

The *Pelham* rule was also applied in *Neal v. Baker*, 194 Ill. App. 3d 485, 551 N.E.2d 704 (1990), where the sole income beneficiary for life under a testator's will sued the executor's attorney, alleging that he had a duty to exercise reasonable skill and care in advising the executor which duty ran to her as a beneficiary of the estate; more specifically, the plaintiff maintained that she was an intended beneficiary of the relationship between the executor and the defendant. *Neal*, 194 Ill. App. 3d at 486. The *Neal* court concluded that no "duty existed on behalf of the attorney for the estate as to the plaintiff." *Neal*, 194 Ill. App. 3d at 487. The court first outlined the principles espoused in *Pelham* and found that,

> "[a]pplying *Pelham's intent to directly benefit* test to the facts alleged in the amended complaint, it is clear that Anna Neal was not a direct third-party beneficiary. The primary purpose of the attorney-client

27

> relationship between First Trust Bank and defendant was to assist First Trust Bank in the proper administration of its duties. [Citation.] It is obvious that defendant could not have been hired with the intent to directly benefit Anna Neal when the adversarial nature of the relationship between Anna Neal and the attorney becomes evident. In this case, for example, Anna Neal contested the defendant's position that she should pay the inheritance tax as opposed to the estate. In such a situation, which is not uncommon in administering estates, the beneficiary becomes the opposing party in an adversarial forum. [Citation.]" *Neal*, 194 Ill. App. 3d at 488.

The *Neal* court then noted that neither *Pelham*, nor *McLane v. Russell*, 131 Ill. 2d 509, 546 N.E.2d 499 (1989), a recent Illinois Supreme Court case addressing a similar issue, *"mandate* that the drafters of a will owe fiduciary duties to intended beneficiaries of a will" in all cases. (Emphasis in original.) *Neal*, 194 Ill. App. 3d at 488. See also *Schwartz v. Cortelloni*, 177 Ill. 2d 166, 174-75, 685 N.E.2d 871 (1997) ("In determining whether a duty is owed to a third party, the key factor to be considered is whether the attorney acted at the direction of or on behalf of the client for the benefit of a third party"); *Gagliardo v. Caffrey*, 344 Ill.

28

1-04-1934

App. 3d 219, 228, 800 N.E.2d 489 (2003) ("the *beneficiaries* of an estate are intended to benefit from the estate and *are owed a fiduciary duty by the executor* to act with due care to protect their interests," *but "[t]hey are not*, however, *owed allegiance by the estate attorney*, who does not have an attorney-client relationship with the beneficiaries and whose 'first and only allegiance' is to the estate in such adversarial situations") (emphasis added); *In re Estate of Vail*, 309 Ill. App. 3d 435, 441, 722 N.E.2d 248 (1999) ("The attorney for the executor does not have an attorney-client relationship with the beneficiaries ***. When an adversarial situation arises, the attorney for the executor owes allegiance only to the estate"); *In re Estate of Kirk*, 292 Ill. App. 3d 914, 919, 686 N.E.2d 1246 (1997) (" 'An attorney representing an estate must give his first and only allegiance to the estate when such an adversarial situation arises. [Citation.] Even though the beneficiaries of a decedent's estate are intended to benefit from the estate, an attorney cannot be held to have a duty to those beneficiaries, due to this potential adversarial relationship.' [Citation.]"); *Jewish Hospital of St. Louis, Missouri,* 261 Ill. App. 3d at 763 ("An attorney representing an estate must give his first and only allegiance to the estate, in the event that such an adversarial situation arises. Even though beneficiaries of a decedent's estate are intended to benefit from the estate, an attorney for an estate cannot be held to a duty to a beneficiary of an estate, due to the potentially adversarial

29

relationship between the estate's interest in administering the estate and the interests of the beneficiaries of the estate"; finding no duty between the attorney and beneficiaries of estate); *Rutkoski v. Hollis*, 235 Ill. App. 3d 744, 751, 600 N.E.2d 1284 (1992) (holding that the attorney for the executor of an estate, who was also a beneficiary of that same estate, owed no duty based on the attorney-client relationship between the attorney and executor to him as a beneficiary: "Defendant's primary duty was to Charles as executor of the estate and not to the beneficiaries of the estate, including Charles"; also noting that the plaintiff failed to cite any case in which an attorney who represented an estate was found to have an implied duty to the beneficiaries of that estate).

Based on the foregoing cases, we find that the Attorneys owed no duty to petitioners. First, to extend such a duty would go against the concern expressed in *Pelham* that an attorney's liability for negligence, or breach of fiduciary duty here, should "not extend to an unlimited and unknown number of potential plaintiffs." *Pelham*, 92 Ill. 2d at 20. In the instant case, at the time the Plan was distributed, the only other heir known was Owen. The other petitioners did not surface until two and one-half months later. Second, there is no "clear indication," as is necessary when an adversarial situation exists as here, that Sharon retained the Attorneys with the intent to directly confer a benefit upon petitioners, let alone any evidence that this was the primary

purpose for retention of counsel.  Rather, Sharon retained counsel to assist her in the proper administration of Shirley's estate. See *Neal*, 194 Ill. App. 3d at 488 ("the primary purpose of the attorney-client relationship between [the executor] and defendant [the attorney] was to assist [the executor] in the proper administration of its duties").  This is particularly true here given the adversarial nature of petitioners' claim.  As in *Neal*, it is obvious that Sharon did not retain counsel with the intent to benefit petitioners, particularly where there is no evidence that she was even aware of their existence.  Accordingly, we find that the Attorneys owed no duty to petitioners.

Even assuming *arguendo* that the Attorneys owed petitioners a duty, that duty would not extend to distribution of the Plan.  As discussed above with respect to Sharon, duty extends only to estate matters.  Here, the Plan was not and never would have been a part of the Estate and, thus, was not an Estate matter.  We see no reason why this limitation would not apply equally to an attorney representing an administrator since the sole purpose of the representation is to administer the estate.  Accordingly, because petitioners could prove no set of facts entitling them to relief, we find that the trial court properly granted the Attorneys' motions to dismiss.

We therefore conclude that, because no duty was owed to petitioners, they could not sustain a cause of action against either Sharon or the Attorneys, and we thus need not address the

issues of breach of duty, proximate cause, damages, or any other issue raised by the parties.

CONCLUSION

For the reasons stated, we affirm the judgment of the circuit court of Cook County.

Affirmed.

CAHILL, P.J., and GORDON, J., concur.